[Cite as *State v. Webster*, 2014-Ohio-5647.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130700 |
| | | TRIAL NO. B-1202438 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TYRELLE WEBSTER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 24, 2014

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Phillip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bruce K. Hust*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Judge.**

{¶1}     Defendant-appellant Tyrelle Webster appeals his convictions for murder with a firearm specification and having a weapon while under a disability. Webster challenges the weight of the evidence below, and argues that the trial court erred by retrying him following his request for a mistrial and by refusing a jury instruction for voluntary manslaughter.  We affirm his convictions.

### The Second Trial

{¶2}     At the second jury trial in this case, the state presented evidence that Webster had shot and killed Grover Watson.  The men had been hanging out at Watson's home with Webster's girlfriend, Tasha Alexander, and with Paul Walz.  At some point, Webster and Watson got into an argument, and Webster punched Watson.  As the fight progressed, Watson struck Webster with a chair.  Then Alexander and Webster drove off.

{¶3}     Webster and Alexander returned to Watson's home about 20 minutes later.  At first, Webster stayed in the car while Alexander went to speak to Watson at the back door of his home.  After a few minutes, Webster got out of the car with a gun in his hand.  He told Watson that he was going to kill him.  The three went into Watson's home.  The two men argued for several minutes, and then Webster shot Watson three times.  He and Alexander ran to her car and left.  Webster called Walz to tell him that the victim "got what he got.  Now you're going to get what you're going to get."

{¶4}   Testing revealed that a fired .38-caliber bullet recovered from Watson's couch and two fired .38-caliber bullets recovered during his autopsy were fired from the same firearm.  In addition, four .38-special cartridge casings, found in a trash can in Alexander's apartment, were fired from the same firearm.  And gunshot residue was found on the coat and jacket that Webster had been wearing at the time of the offense.

### The First Trial Ended in a Mistrial

{¶5}   During Webster's first jury trial, the state had presented the testimony of Watson's aunt, several police officers, and Walz.  After cross-examining Walz, defense counsel moved for a mistrial, arguing that the state had failed to provide Walz's prior statement to police in discovery.  Defense counsel acknowledged that they were aware that Webster had telephoned Walz, but claimed they did not know that Webster had made an inculpatory statement in that call.

{¶6}   The prosecutor responded that he was not required to disclose a statement made by Webster to a civilian, or to disclose a police officer's notes about the statement.  In addition, the prosecutor noted that Webster had had "three sets of attorneys, [and] that a lot of discovery was given to prior attorneys."  The prosecutor maintained that, based upon the extensive amount of material already provided, there would have been no reason that the state would have withheld the officer's notes about the phone call, even if it was not discoverable.  Several months before the first trial, the state had turned over duplicate discovery to trial counsel.  In addition, the prosecutor pointed out that the defense could demonstrate no prejudice because

3

the state had provided a transcription and a recording of Webster's interview with detectives, in which the detectives had explicitly referred to Webster's telephoned threat to Walz.

{¶7}     The trial court granted Webster's motion for a mistrial over the state's objection. The issue of whether the mistrial action was appropriate is not before us on appeal.

## Double Jeopardy

{¶8}     In his first assignment of error, Webster argues that the trial court erred by failing to grant his motion to dismiss following the court's declaration of a mistrial. Specifically, Webster contends that the state had deliberately provoked him into requesting a mistrial and that a retrial was therefore barred on double-jeopardy grounds.

{¶9}     Generally, a criminal defendant's motion for a mistrial does not prevent retrial because the defendant purposely chose to "forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *State v. Doherty*, 20 Ohio App.3d 275, 485 N.E.2d 783 (1st Dist.1984). But prosecutorial misconduct will bar a second trial when the conduct is intended to deliberately provoke the defendant into requesting a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *State v. Loza*, 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994). If the defendant's prior trial resulted in a mistrial due to the prosecutor's failure to provide discovery under Crim.R. 16, the critical inquiry in determining whether double

4

jeopardy bars a second trial is whether the mistrial has impaired the defendant's opportunity for acquittal, or in the alternative, whether the prosecution has gained any advantage. *State v. Johnson*, 1st Dist. Hamilton No. C-870124, 1988 Ohio App. LEXIS 541 (Feb. 24, 1988), citing *State v. Montgomery*, 3 Ohio App.3d 280, 282, 445 N.E.2d 254 (1st Dist.1982).

{¶10} A trial court's finding with respect to the intent of a prosecutor to cause a mistrial is a finding of fact, and an appellate court will accord great deference to such a finding. *Id.*; *Kennedy* at 675. Intent generally is inferred from objective facts and circumstances. *Kennedy* at 675.

{¶11} In this case, the state opposed Webster's motion for a mistrial. Following a hearing on Webster's motion, the trial court found that the prosecutor had not intended to goad Webster into requesting a mistrial. The court noted that the prosecutor had been "caught off guard in the spur of the moment" when the discovery issue arose. As Justice Powell recognized in his concurrence in *Kennedy*, a prosecutor who is surprised by and opposes a defendant's motion for a mistrial generally has not intended to provoke a mistrial. *Kennedy* at 680. Because nothing in the record convinces us that the court's finding was clearly erroneous, we will not disturb its finding that the prosecutor's conduct was unintentional.

{¶12} Moreover, the retrial neither impaired Webster's chances of acquittal nor gave the state any advantage. The mistrial was granted during the state's case-in-chief. At the second trial, the state presented the same evidence that it had presented in the first trial. And Webster had the advantage of more time to prepare

5

his defense and of having previewed a large part of the state's case in the first trial. Webster's opportunity for a fair second trial was not compromised. Accordingly, we overrule the first assignment of error.

### Refusal to Give a Voluntary-Manslaughter Instruction

{¶13} In his second assignment of error, Webster argues that the trial court abused its discretion by refusing to instruct the jury on voluntary manslaughter. He contends that the instruction was warranted because there was evidence that the victim had hit him with a chair prior to the shooting.

{¶14} Even if a defendant raises a complete defense to the charged crime, the trial court must give an instruction on a lesser-included offense if under any reasonable view of the evidence it is possible for the jury to find the defendant not guilty of the greater offense and guilty of the lesser offense. *See State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 33-34. The same test applies in the context of a lesser-degree offense. *See State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992).

{¶15} Voluntary manslaughter is a lesser-degree offense of murder because its elements are contained within the offense of murder, with the addition of one or more mitigating elements. *Id.* Murder is defined as purposely causing the death of another. R.C. 2903.02(A). Voluntary manslaughter is defined as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C.

2903.03(A). Thus, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. *See Shane* at 632.

{¶16} In this case, the trial court properly refused an instruction on voluntary manslaughter because there was insufficient evidence that Webster had acted in a sudden fit of rage. Although Watson had struck Webster with a chair, the evidence demonstrated that Webster had had more than sufficient time to cool off between the alleged provocation and the killing. *See State v. Huertas*, 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058 (1990). Under any reasonable view of the evidence, a jury could not have found Webster guilty of the lesser offense, and the trial court properly declined a voluntary-manslaughter instruction. We overrule the second assignment of error.

**Weight of the Evidence**

{¶17} In his third and final assignment of error, Webster argues that his convictions were against the manifest weight of the evidence. When reviewing the manifest weight of the evidence, we must weigh the evidence and consider the credibility of the witnesses to determine whether the trier of fact lost its way and committed such a manifest miscarriage of justice in finding the defendant guilty that the convictions must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

7

{¶18}   Webster was convicted of murder under R.C. 2903.02(A), an accompanying firearm specification, and having a weapon while under a disability under R.C. 2923.13(A)(3).   Numerous witnesses testified that Webster had shot Watson to death, and Webster stipulated that, at the time of the offense, he had been under a disability stemming from three prior felony drug convictions.  The jury was in the best position to determine the credibility of the witnesses, and it was entitled to reject Webster's testimony that he did not kill Watson.  Moreover, this is not an "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19}   Accordingly, we overrule the third assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **DEWINE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

8