[Cite as *State v. Kitchen*, 2018-Ohio-5244.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 18CA3640 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| MICHAEL KITCHEN, | : | |
| Defendant-Appellant. | : | **RELEASED: 12/07/2018** |

APPEARANCES:

Michael L. Benson and Mark D. Tolles, II, Benson & Sesser, L.L.C., Chillicothe, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Harsha, J.

**{¶1}** Following a declaration of a mistrial based on prosecutorial misconduct and scheduling of a new jury trial, the Ross County Court of Common Pleas denied Kitchen's motions to dismiss the charge against him based on double-jeopardy and constitutional speedy-trial claims.

**{¶2}** Because the common pleas court's interlocutory entry denying his motion to dismiss based on the constitutional right to a speedy trial does not constitute a final, appealable order, we lack jurisdiction to address the merits of that assignment of error.

**{¶3}** We do have jurisdiction to address Kitchen's assertion that the trial court erred by denying his motion to dismiss based on double jeopardy. However, we reject it because in general, there is no double-jeopardy bar to a retrial following a trial court's granting of a criminal defendant's motion for a mistrial. And he has not established the narrow exception to the general rule, which requires the request for a mistrial be

precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial.

{¶4}    Here, the state committed prosecutorial misconduct by violating the trial court's order barring it from introducing any evidence of what Kitchen said in recorded footage that was not disclosed to him before trial.  However, there is no evidence that the state intended to cause a mistrial by asking an officer one question regarding a statement Kitchen made on the undisclosed footage. Specifically, (1) there was no sequence of overreaching before the single question; (2) the state resisted Kitchen's request for a mistrial and appeared genuinely surprised that it had violated the court's order; and (3) the trial court concluded that although the state had committed prosecutorial misconduct by eliciting testimony that violated its order, it was not the state's intent to cause the mistrial.  We overrule Kitchen's first assignment of error and affirm the trial court's judgment denying the double-jeopardy motion to dismiss.

I. FACTS

{¶5}    The Ross County Grand Jury returned a secret indictment charging Michael Kitchen with one count of sexual battery in violation of R.C. 2907.03, a third-degree felony.  The Ross County Sheriff's Office arrested Kitchen and following his arraignment the next day, he was released from custody upon posting a recognizance bond.  In its bill of particulars the state alleged that Kitchen engaged in vaginal intercourse with Sara Howell, who was not his spouse, when he knew that she was unaware that the act was being committed.

{¶6}    In its opening statement at the jury trial, the state asserted Sara Howell and her boyfriend let Kitchen, her high school friend, sleep over on a couch in their

apartment in Chillicothe after going to eat.  After her boyfriend left the next morning for work, Howell awoke in her bedroom to discover that Kitchen was engaged in sex with her without her consent.  Kitchen finished the sexual act, left the room, and went back to sleep on the couch in another room.  After exchanging text messages with her father and a friend, Howell contacted the police, made a report, and was administered a rape kit.  The testing determined that Kitchen's DNA was found in semen in both Howell's vaginal and anal cavities.

{¶7}    In Kitchen's counsel's opening statement, he contended that Kitchen and Howell engaged in consensual sex, which had been initiated by Howell.  He further conceded that when Kitchen was awakened by three law enforcement officers responding to Howell's report of sexual battery, he lied that he did not have sex with Howell because he was terrified and did not know what Howell had told them.

{¶8}    The state's first witness, Chillicothe Police Officer Shane Simmons, testified that he and Officer Chip Campbell were dispatched to Howell's apartment to respond to a reported sexual assault.  They talked to Howell and then entered the apartment, where they observed Kitchen asleep on a couch.  Then they contacted Detective Twila Goble, who arrived and with Officer Campbell, they began questioning Kitchen after advising him of his Miranda rights.  Officer Simmons's body camera was activated during his interaction with both Howell and Kitchen.  On cross-examination Kitchen's attorney played the body camera footage that had been provided to him by the state in discovery.  However, Officer Simmons testified that the footage shown was not the end of his body camera footage.  He indicated he had viewed other footage from his body camera concerning the reported sexual battery.

{¶9}   Outside the presence of the jury Officer Simmons explained that there was approximately 21 minutes of additional footage of Officer Campbell interrogating Kitchen that the police had failed to disclose to the prosecutor because the old body cameras would download footage to the server in multiple sections when it became too lengthy. Kitchen moved for a mistrial based on the state's failure to disclose this evidence in discovery.  The trial court overruled Kitchen's motion, ordered the state to provide Kitchen with a copy of the undisclosed body camera footage, and continued the case until the next morning to permit Kitchen and his counsel to review the footage.

{¶10}  The next morning after receiving the previously undisclosed recording of Officer Simmons's body camera footage, Kitchen's attorney again asked for a mistrial, generally asserting that "there would have been different statements and procedure and strategy in this case had we been provided it."  He claimed that even if this additional undisclosed footage was excluded, "it still doesn't alleviate the issue that the jury knows a video exists and is not going to be play[ed] and I've made statements, or representations, that the video would be played * * *."  Significantly, the parties and the trial court agreed that the state's failure to provide this footage to the defense was unintentional.

{¶11}  The state noted Officer Simmons's and Detective Gobles's statements in a Master Incident Report, which the state had provided to Kitchen and his counsel, referenced several of Kitchen's statements from the undisclosed body camera footage: (1) Kitchen told the officers that he did not remember having sex with Sara; (2) Kitchen told Officer Campbell he had a dream last night about having sex with his girlfriend; and

(3) Kitchen stated that his girlfriend had told him that he had groped her in his sleep before.

**{¶12}** The trial court denied Kitchen's second motion for mistrial because:  (1) despite his concession that he initially told police he did not have sex with Howell, Kitchen's defense of consensual sex was consistent with what both the undisclosed and disclosed portion of Officer Simmons's body camera footage revealed; (2) portions of the undisclosed body camera footage were disclosed to Kitchen in the police reports the state gave to the defense in discovery; and (3) although there were discrepancies and inconsistencies created by the state's Crim.R. 16 violation, they were not substantially material to Kitchen's defense.

**{¶13}** Nevertheless, the trial court prohibited the state "from utilizing any portion of the undiscovered video in any way, shape or form," but permitted the defense to use it in any way it felt necessary.  The court finally noted that it had not had an opportunity to review the undisclosed footage, but that it would reserve further ruling until the court had the chance to compare it with the reports that were provided in discovery.

**{¶14}** Upon return from recess the trial court instructed the jury that "[b]ased upon the State's failure, not the defense, * * * to provide the remainder of the video, this Court has ruled that the undisclosed portion will not be admitted into evidence. Therefore, you are not to draw any inference that the Defendant has failed to produce the remainder of the video * * *."  The parties then concluded their examination of Officer Simmons.

**{¶15}** On the state's direct examination of its next witness, Officer Campbell, it questioned him about statements Kitchen had made addressing why he stayed at

Howell's apartment that night. Apparently, Kitchen told the officers that he and Howell had been friends for a while and they had not spoken for some time. Kitchen's counsel objected to this testimony on the basis that it had not been disclosed in discovery, but the state countered that Kitchen's statement was contained on the disclosed body camera footage. The trial court overruled the objection, but again warned the state that "if this officer testified about anything said only on the undisclosed portion, that is a violation of my order and if he violates my order or any other officer violates my order, I will grant a mistrial."

{¶16} Subsequently, the state asked Officer Campbell "when you were speaking with the Defendant in this case, did you happen to ask him about any dreams he might have had?" and the officer responded that he had. Kitchen objected and moved for a mistrial.

{¶17} The assistant prosecutor opposed the motion and stated that it was her understanding that she was permitted to ask about statements that were on the undisclosed part of the body camera footage if they were in fact contained in the police reports provided in discovery. Kitchen's statement about the dream was on both the undisclosed footage and the disclosed police reports. The assistant prosecutor stated that it was not her intent to violate the court's order and moved to strike her question and Officer Campbell's answer, and release the witness. The trial court noted that it did not understand how the assistant prosecutor had misinterpreted its order; it granted the mistrial. In its entry declaring the mistrial the court noted that it initially overruled Kitchen's motion for a mistrial based on the state's violation of Crim.R. 16, but granted Kitchen's renewed motion when the state violated the court's curative order.

**{¶18}**  Subsequently, the trial court set the retrial date.  Over four months after the mistrial and two months after rescheduling of the trial Kitchen filed motions to dismiss based on double-jeopardy and his constitutional speedy-trial rights.  Kitchen claimed that the state intentionally goaded him to request a mistrial because of its prosecutorial misconduct and that the over five-month delay between the mistrial and the scheduled retrial was constitutionally unreasonable.  The state responded.

**{¶19}**  After the state responded the trial court denied Kitchen's motions to dismiss in two separate entries issued on the same date.  Addressing double jeopardy the court concluded that "[a]lthough this Court cannot understand how his ruling was misinterpreted by the Assistant Prosecuting Attorney, this Court cannot find that the offending question was designed to goad the defendant into moving for a mistrial.  It certainly was prosecutorial misconduct, but this Court cannot find that i[t] was the intention of the Assistant Prosecuting Attorney to cause a mistrial."  On the constitutional speedy-trial claim the court concluded "the five month delay in rescheduling the Defendant's trial does not constitute presumptive prejudice" and "[e]ven in considering the four factor balancing test this Court cannot determine that the five month delay is constitutionally unreasonable."

## II. ASSIGNMENTS OF ERROR

**{¶20}**  Kitchen assigns the following errors for our review:

1.  THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT MICHAEL KITCHEN'S MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS.

2.  THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT MICHAEL KITCHEN'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS.

### III. LAW AND ANALYSIS

#### A.  Jurisdiction

{¶21}   Kitchen contests the trial court's entries denying his motions to dismiss on double-jeopardy and constitutional speedy-trial claims.  Before addressing the merits of the assignments of error, we must determine whether this appeal is properly before us.  Although the parties do not suggest that we lack jurisdiction, "litigants cannot vest a court with subject-matter jurisdiction by agreement"; subject-matter jurisdiction is properly raised by an appellate court sua sponte.  *See Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 22; *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 2013-Ohio-67, 985 N.E.2d 450, ¶ 13.

{¶22}   Courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Ohio Constitution, Article IV, Section 3(B)(2).  "R.C. 2505.03(A) limits the appellate jurisdiction of courts of appeals to the review of final orders, judgments, or decrees."  *See State ex rel. Bd. of State Teachers Retirement Sys. of Ohio v. Davis*, 113 Ohio St.3d 410, 2007-Ohio-2205, 865 N.E.2d 1289, ¶ 44.

{¶23}   Clearly "the denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order."  *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 6. Therefore, we have jurisdiction to address the merits of Kitchen's first assignment of error.

{¶24}   However, "an order denying a motion to dismiss on speedy trial grounds is not a final appealable order * * *."  *See State v. Payne*, 4th Dist. Lawrence No. 16CA3,

2016-Ohio-1411, and cases cited there.  Consequently, we lack jurisdiction to address the merits of Kitchen's second assignment of error, which we dismiss.

### B.  Double Jeopardy

**{¶25}**  Kitchen asserts that the trial court erred in overruling his motion to dismiss, which was based on double-jeopardy grounds.  We apply a de novo standard of review to address the denial of that motion.  *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20.

**{¶26}**  The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  This protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution, and prohibits the state from subjecting a defendant to multiple trials for the same offense.  *See Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) as cited in Katz & Giannelli*, Baldwin's Oh. Prac. Crim. L.*, Section 72:2 (3d Ed.2018).

**{¶27}**  Generally, "[w]hen a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar a retrial."  *State v. Loza*, 71 Ohio St.3d 61, 70, 641 N.E.2d 1082 (1994), citing *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); Katz & Giannelli*, Baldwin's Oh. Prac. Crim. L.*, Section 74:5 (3d Ed.2018) ("The United States Supreme Court has never been willing to accept a rigid rule that would automatically bar retrial under any circumstance following a mistrial, holding, instead, that in most instances a mistrial granted with the consent or on the motion of a defendant does not bar retrial under the Double Jeopardy Clause").

**{¶28}** Nevertheless, the United States and Ohio Supreme Courts have recognized a narrow exception to the general rule exists when prosecutorial misconduct giving rise to a successful motion for a mistrial was intended to provoke or goad the defendant into moving for a mistrial. *Kennedy* at 676, 679; *Loza* at 186. This determination requires the trial court to examine the totality of the circumstances to make a factual finding of the prosecutor's intent; it is entitled to great deference on appeal notwithstanding our general de novo review. *See, e.g., State v. Webster*, 1st Dist. Hamilton No. C-130700, 2014-Ohio-5647,¶ 10, citing *Kennedy* at 675; *see also Phillips v. Court of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 812 (6th Cir.2012) ("Although we review the state proceedings de novo, we nevertheless find it appropriate to give deference to the trial court's factual finding regarding the intent of the prosecutor because it was in the best position to make the finding").

**{¶29}** "A reviewing court may consider the following factors in determining whether the required intent to provoke a mistrial existed: (1) whether there was a sequence of overreaching prior to the single prejudicial incident; (2) whether the prosecutor resisted or was surprised by the defendant's motion for a mistrial; and (3) the findings of the trial and appellate courts concerning the intent of the prosecutor." *State v. Betts*, 8th Dist. Cuyahoga No. 88607, 2007-Ohio-5533, ¶ 27, citing *State v. Girts*, 121 Ohio App.3d 539, 553, 700 N.E.2d 395 (8th Dist. 1997); *see also Kennedy* at 680 (Powell, J., concurring); *State v. Greene*, 7th Dist. Mahoning No. 02 CA 122, 2005-Ohio-2420, ¶ 24.

**{¶30}** In reviewing these factors here, we find no sequence of overreaching by the prosecuting attorney before the single question concerning whether Officer

Campbell had asked Kitchen about any dreams he might have had.  The trial court had previously determined that the state had failed to provide discovery of the 21 additional minutes of Officer Simmons's body camera footage, but the parties agreed, and the court found, that the discovery violation was unintentional and caused by the recording system used at the time.  *See Betts* at ¶ 26, citing *Girts* at 553 ("Mere negligence will not suffice to show intent to provoke a mistrial").  The next instance of misconduct that Kitchen cites is when the assistant prosecutor asked Officer Campbell what statements Kitchen had made about why he stayed at Howell's apartment the night before the incident.  But the trial court overruled his objection to this question, and the record does not contain any evidence that would contradict that ruling—the state represented that this evidence was contained in the body camera footage that had been properly disclosed to Kitchen in discovery.  Therefore, there was no sequence of overreaching by the prosecutor before the question that prompted the mistrial.

{¶31}  Moreover, even assuming that Kitchen could have established a sequence of overreaching before the conduct that resulted in the mistrial, the Supreme Court of the United States held in *Kennedy*, 456 U.S. 667, at 675-676, 102 S.Ct. 2083, 72 L.Ed.2d 416, that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion * * * does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."  *See also State v. Hodges*, 2018-Ohio-447, 105 N.E.3d 543, ¶ 18 (7th Dist.).

{¶32}  Looking at the second factor, the record establishes that the state consistently and vehemently resisted Kitchen's motions for mistrial.  And it apparently

was genuinely surprised by the motion and the trial court's declaration of a mistrial. The assistant prosecutor professed confusion over whether she was permitted to elicit testimony concerning dreams when the substance of those same statements was previously disclosed in discovery through police reports. Although this did not prevent the trial court's declaration of mistrial, the state's confusion and its resistance does indicate that the state was surprised by it.

{¶33} On the final factor the trial court found that although the prosecutor's violation of its order warranted a mistrial, the solitary question to Officer Campbell concerning Kitchen's dreams was not intended by the prosecutor to force a mistrial as a strategic trial tactic. This line of questioning concerned peripheral evidence that did not substantially detract from Kitchen's stated defense of consensual sex and his admission that he had initially lied to the officers that he did not have sex with Howell. Because the trial court's conclusion on this issue is supported by the record, we accord it the deference it is entitled to. *Webster*, 2014-Ohio-5647, at ¶ 10, citing *Kennedy*, 456 U.S. 667, 675, 102 S.Ct. 2083, 72 L.Ed.2d 416.

{¶34} Based on our de novo review we agree with the trial court that this case does not fit within "the narrow exception adopted by the United States Supreme Court in *Kennedy* * * * reserved for the limited set of circumstances where the nature of the state's misconduct clearly and unquestionably demonstrates its intent to cause or invite a mistrial." *See State v. Kelly*, 2015-Ohio-1948, 34 N.E.3d 513, ¶ 19 (1st Dist.).[1] We overrule Kitchen's first assignment of error.

---

[1] Although the parties assert that no Ohio case has ever found that this strict standard to prove a double-jeopardy violation based upon prosecutorial misconduct was satisfied, our own research uncovered at least one case. In *State v. Owens*, 127 Ohio App.3d 65, 711 N.E.2d 767 (6th Dist.), an appellate court held that the state goaded a defendant into seeking a mistrial when the prosecutor vigorously fought for

## V. CONCLUSION

**{¶35}** For lack of jurisdiction, we dismiss Kitchen's second assignment of error, which contests the denial of his motion to dismiss on constitutional speedy-trial grounds. Having overruled Kitchen's first assignment of error, we affirm the judgment of the trial court denying his motion to dismiss on double-jeopardy grounds.

APPEAL DISMISSED IN PART AND

JUDGMENT AFFIRMED.

more than three months and won the right to retain the confidentiality of an informant's identity, but the prosecutor then revealed the name of the informant during the state's opening statement. Needless to say, the facts in that case are distinguishable from the facts here.

## **JUDGMENT ENTRY**

It is ordered that the APPEAL IS DISMIISSED IN PART AND THE JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     William H. Harsha, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**