[Cite as *Gemmell v. Anthony*, 2019-Ohio-469.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| KARRY GEMMELL, et al., | : | |
| Plaintiffs-Appellees, | : | Case No. 18CA8 |
| vs. | : | |
| MARK ANTHONY, et al., | : | DECISION AND JUDGMENT ENTRY |
| Defendants-Appellants. | : | |

APPEARANCES:

Charles M. Elsea, Lancaster, Ohio, for appellants.

Timothy E. Miller and Dale D. Cook, Columbus, Ohio, for appellees.

A.C. Strip and Kenneth R. Goldberg, Columbus, Ohio, for receiver.

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-5-19
ABELE, P.J.

{¶ 1} This is an appeal from a Hocking County Common Pleas Court judgment entered in favor of Karry Gemmell, Hocking Peaks, LLC, GEM Coatings, LLC, and Ohio ATV World, LLC, plaintiffs below and appellees herein. Mark Anthony, M&T Property Investments, Ltd., and Hocking Peaks Adventure Park, LLC, defendants below and appellants herein, assign the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN NOT GRANTING
JUDGMENT AS TO JUDICIAL DISSOLUTION OF HOCKING

PEAKS, LLC."


SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN NOT GRANTING
JUDGMENT TO ANTHONY ON HIS BREACH OF
CONTRACT CLAIM DESPITE FINDING THAT GEMMELL
CONVERTED PROPERTY, BREACHED HIS FIDUCIARY
DUTIES, AND MADE UNAUTHORIZED DISTRIBUTIONS."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN AWARDING GEMMELL
DAMAGES ALLEGEDLY ARISING FROM LOST PROFITS
AND FROM HIS 'CAPITAL CONTRIBUTION.'"

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT OTHERWISE ERRED IN ITS
CALCULATION OF GEMMELL'S DAMAGES."

FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN IMPOSING JUDGMENT
AGAINST M&T PROPERTY INVESTMENTS, LTD. BECAUSE
M&T HAD THE UNAMBIGUOUS RIGHT TO TERMINATE
THE LEASE WITH HOCKING PEAKS, LLC, AND PROPERLY
DID SO."

SIXTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN FAILING TO TERMINATE
THE RECEIVERSHIP AND IMPOSING THE COST OF THE
RECEIVERSHIP ON ANTHONY AND M&T."

{¶ 2} This is the twisted tale of two business partners who have spent a staggering sum litigating which partner stole more money from Hocking Peaks, LLC (HP), a limited liability company formed in 2010.[1]   Gemmell and Anthony formed HP to operate a zip line and

---

[1] Appellants' *Jarndyce v. Jarndyce* reference to Charles Dickens's novel, *Bleak House*, is

adventure park on property owned by Anthony's company, M&T Property Investments, Ltd. (M&T). Gemmell's company, Ohio ATV, contracted with Acrobranche U.S., Inc. to purchase and install the zip lines at a cost of $385,000. Gemmell's company, GEM Coatings, used its line of credit to make payments to Acrobranche. Anthony, through his company M&T, agreed to lease the property to HP for $500 per month.

{¶ 3} M&T's 145-acre property contains Anthony's personal residence, in addition to the adventure park. The park contains three zip line courses, an eighteen-hole disc golf course, a mud bog, an outdoor paint ball theater, an OGO Ball (Hamster Ball) hill, and a Slidezilla water slide.

{¶ 4} To state that the business relationship proved acrimonious is an understatement. After the park opened in 2010, the relationship rapidly deteriorated. Anthony claimed that Gemmell commingled HP's funds with funds from Gemmell's other companies, used HP's funds to pay Gemmell's other companies' debts, and stole large amounts of cash from HP. Anthony also alleged that Gemmell wrongly used HP's funds to pay for the zip lines that were the primary attraction at the park. Anthony believed that although Gemmell paid for the zip lines, HP did not have any obligation to compensate Gemmell for the zip lines. Anthony instead believed that Gemmell would contribute the zip lines to HP and that Anthony would contribute the real estate by agreeing to rent it to HP at a below-market rate. Anthony did not think that either would be compensated for the value of his contribution to HP–Gemmell for his zip-line contribution, and Anthony for the difference between the fair market rental value of the property and the

particularly appropriate.

below-market rate HP agreed to pay. Rather, Anthony believed that the parties simply would contribute what they had to offer and then equally divide the profits.

{¶ 5} Gemmell, on the other hand, claimed that the parties agreed that HP would reimburse Gem Coatings for the amounts paid under its line of credit to purchase the zip lines. Gemmell thus wrote checks from HP's account, as well as Gem Coatings's account, to pay the line of credit.

{¶ 6} The parties' operating agreement, however, did not explicitly discuss the import of Gemmell's zip lines or of M&T's below-market-rate rental agreement. The agreement simply specified that neither member was "responsible to make any capital contribution at the time of executing [the operating agreement]." The agreement additionally stated that neither member had "any obligation or liability to the Company to make any contributions to the capital of the Company" and that "[a]ll agreed upon contributions will be re-paid on a pro-rated basis, based upon available funds." The agreement also provided that "[r]e-payments will be issued before dividends or revenue sharing." Nothing in the agreement indicated that the parties agreed that the zip lines constituted Gemmell's capital contribution or that M&T's property constituted Anthony's capital contribution. Additionally, no other written documentation exists to establish either of the foregoing. Nevertheless, Gemmell, through GEM Coating's line of credit, paid Acrobranche, the zip line vendor, $258,000 by the end of March 2010. HP also paid approximately $30,000 toward the zip-line loan.

{¶ 7} In early 2012, Anthony took over HP's finances. Later in the year, Anthony stopped making any payments toward the zip-line loan. Gemmell asked Anthony to continue making the payments, but Anthony refused. Anthony advised Gemmell to bankrupt GEM

Coatings so as to discharge the debt. Chase later obtained a judgment against Gemmell for approximately $208,481,[2] the remaining principal balance.

{¶ 8} The parties' relationship continued its descent. Around August of 2012, Anthony was under the impression that he and Gemmell had agreed to end their business relationship. Anthony thus closed HP's bank account, opened a new bank account with HP's remaining funds, and started a new company, Hocking Peaks Adventure Park, LLC (HPAP). HPAP differed from HP in name and ownership only.

{¶ 9} On January 3, 2013, Anthony sent a letter to Gemmell's counsel that Gemmell and his wife, Clare Aitken, repeatedly asked Anthony to close HP. Anthony's letter advised that "per their request[,] December 31, 2012 shall be deemed closing date." In early March 2013, Anthony and M&T's counsel sent Gemmell a letter notifying Gemmell that M&T had terminated HP's lease.

{¶ 10} Around that same time, appellees filed the lawsuit that is the subject of this appeal. Appellees claimed that Anthony stole HP's assets and used them to form a new company, HPAP. Appellees also alleged that Gemmell and his two companies, Gem Coatings and Ohio ATV, loaned HP over $400,000, and that Anthony and Gemmell agreed that HP would repay the loans. Appellees' amended complaint included claims for conversion, Anthony's breach of the operating agreement, unjust enrichment, Anthony's breach of fiduciary duties, unfair

---

[2] Plaintiff's Exhibit 14 documents the Chase line of credit payments and advances. The ending balance is $208,418.26. Additionally, the testimony from the October 2013 hearing indicates that Chase received a judgment in the amount of $208,418.26. The trial court's March 2018 decision, however, states that Chase obtained a judgment against Gem Coatings in the amount of $208,481.26. For purposes of this decision, we nevertheless will presume that the trial court's factual finding is correct. To the extent the correct amount is $208,418.26, the trial court may correct this clerical error at any time.

competition, business interference, Anthony's return of unlawful distributions, failure to provide access to HP's financial records, and a declaratory judgment.

{¶ 11} Appellees first asserted that appellants have removed, transferred, misappropriated, and/or stolen appellees' property and assets and converted the property and assets to appellants' own use and benefit. Appellees requested compensatory and punitive damages as a result of appellants' conversion.

{¶ 12} Second, appellees alleged that Anthony breached the operating agreement by taking unauthorized distributions, operating HP in a manner that is contrary to HP's best interest, making unauthorized withdrawals of HP's funds, and unilaterally dissolving HP.

{¶ 13} Appellees' third claim for relief averred that appellants' misappropriations have unjustly enriched appellants.

{¶ 14} Appellees' fourth claim for relief alleged that Anthony's misappropriations breached the fiduciary duties Anthony owed to HP and Gemmell.

{¶ 15} Appellees' fifth claim for relief asserted that appellants have engaged in unfair competition.

{¶ 16} In their sixth claim for relief, appellees claimed that appellees have interfered with appellees' contracts, business rights, and opportunities.

{¶ 17} Appellees' seventh claim for relief alleged that Anthony is liable to appellees for the amount of distributions or payments that Anthony received in excess of those that could have been paid or distributed without a violation of the operating agreement.

{¶ 18} In their eighth claim for relief, appellees asserted that Anthony has violated the operating agreement by denying Gemmell access to HP's financial records and that as a result,

appellees have been damaged and continue to suffer damages.

{¶ 19} Lastly, appellees asserted that they are entitled to a judgment declaring that (1) the zip lines and other physical equipment belong to appellees, and (2) HPAP is the alter ego of HP.

{¶ 20} Appellants answered and filed counterclaims that raised seven claims for relief. Appellants first claim for relief alleged that Gemmell converted Anthony's personal property. Appellants' second claim for relief averred that Gemmell breached the operating agreement by taking unauthorized distributions, operating HP contrary to HP's best interest, making unauthorized withdrawals, and misappropriating HP's funds. Appellants' third claim for relief asserted that Gemmell's unauthorized and illegal transfers, withdrawals, and misappropriations have unjustly enriched Gemmell. In their fourth claim for relief, appellants alleged that Gemmell breached the fiduciary and statutory duties he owed to Anthony. Appellants' fifth claim for relief averred that Gemmell violated R.C. 1705.22 and the operating agreement by restricting Anthony's access to HP's financial records; appellants demanded an accounting. In their sixth claim for relief, appellants requested the court to enter a decree of judicial dissolution because continuing HP's business with Gemmell no longer is reasonably practicable. Appellants lastly requested the court to enter a declaratory judgment that the zip lines are permanently affixed to M&T's property and that Gemmell may not remove them.

{¶ 21} Additionally, HP asserted a cross-claim against Gemmell. HP alleged conversion, breach of contract, unjust enrichment, breach of fiduciary duties, return of unauthorized distributions, and a declaratory judgment that HP owns the domain name.

{¶ 22} After due consideration, the trial court largely agreed with appellees' claims and awarded $536,151.92 in damages. In its very thorough and well-reasoned seventy-one page

decision, the court found in appellees' favor regarding their claims for conversion, breach of contract, unjust enrichment, and breach of fiduciary duties. The court dismissed appellees' claims for an accounting, judicial dissolution, and declaratory judgment.[3] With respect to appellees' conversion claim, the court found that Gemmell owns the zip lines and that Anthony unilaterally transferred the zip lines and HP's other assets to HPAP. The court found that Anthony violated R.C. 1705.46(B) by failing to wind up the company in accordance with the operating agreement and statutory procedures. The court thus entered judgment "in favor of plaintiffs and against both Mr. Anthony and M&T on" appellees' claim that appellants converted the zip lines. The court awarded Gemmell and Gem Coatings damages in the amount of $343,739.80 due to appellants' conversion. The court calculated the amount of damages by adding "the principal balance owed to Chase Bank and the amount paid to Gem Coatings to Chase."[4]

{¶ 23} The trial court also determined that HP suffered lost profits between 2012 and 2016 in the following amounts and years: (1) $40,890 in 2012; (2) $94,630 in 2013; (3) $131,295 in 2014; (4) $175,715 in 2015; and (5) $230,185 in 2016.[5] The court next found that Anthony and M&T converted HP's funds by using HP's funds to pay M&T's 2010 through 2012 property taxes. The court found the total amount of checks equaled $15,387.06. The court also found

---

[3] It is not clear whether the trial court intended to dispose of the claims contained in appellees' amended complaint or in their initial complaint. Appellees' amended complaint did not include a request for judicial dissolution.

[4] The court's decision does not indicate how it calculated the amount Gem Coatings paid to Chase.

[5] The court's decision does not explain whether it found that appellees suffered lost profits as a result of appellants' conversion or as a result of appellants' breach of contract. We observe, however, that the lost-profit findings appear within the section of the court's decision that concludes appellants converted funds and assets.

that Anthony, M&T, and HPAP converted funds to pay M&T's property taxes in the amount of $5,369.70. The court trial further determined that Anthony converted funds from HP when he used HPAP funds to pay (1) $8,600 for improvements and maintenance to his mobile home park, (2) $1,000 for a down payment for the purchase of real estate, (3) $1,300 for a truck, $1,366.20 for Perry and Fairfield County property taxes, and (4) $700 for expenses related to one of Anthony's other businesses.

{¶ 24} The trial court also found in appellees' favor regarding their breach-of-contract claim. The court determined that Anthony breached the operating agreement in the following respects: (1) taking distributions without following the procedures set forth in the operating agreement; (2) excluding Gemmell from HP's management; (3) selling or otherwise disposing of HP's property without Gemmell's involvement; (4) denying Gemmell access to HP's financial records; (5) terminating HP; and (6) violating the 99-year lease provision. The court additionally found that M&T breached its lease agreement with HP.[6] The court thus entered judgment in appellees' favor regarding the breach-of-contract claim. The court determined that the damages appellees suffered as a result of the breach were the same amount of the damages awarded for appellants' conversion of funds and assets. The court additionally found that appellants were unjustly enriched when they took the zip lines and HP's business from appellees without paying for them. The court thus entered judgment in appellees' favor regarding the unjust enrichment claim, but it concluded that the damages awarded for appellants' conversion adequately compensated appellees.

---

[6] We observe, however, that appellees' amended complaint does not appear to contain a cause of action against M&T for breach of the lease agreement.

{¶ 25} The trial court further determined that Anthony breached the fiduciary duties he owed to appellees, but did not award any additional damages. The court thus awarded $67,667.62 in damages for appellants' conversion of funds (which the court found is 50% of the total amount appellants converted, $135,335.23). The court next calculated the amount of lost profits to which appellees are entitled and found that between 2012 and 2016, HP lost $672,715 in profits. The court then took the amount of damages awarded for appellants' conversion of the zip lines, $343,739.80, and characterized the amount as "[c]apital contribution." The court then deducted that amount, $343,739.80, from the total amount of lost profits, $672,715, to achieve the amount of "[l]ost profits less value of zip lines." The court found the "[l]ost profits less value of zip lines" to be $328,975.20. The court determined that Gemmell's share of "[l]ost profits less value of zip lines" totaled $156,263.22 ($328,975.20 multiplied by 47.5%). The court then added the amount of converted-funds damages, $67,667.20, to the value of the zip lines, $343,739.80, and to the amount of Gemmell's lost profits, $156,264.22. The court found that appellees sustained a total of $567,670.64 in damages.

{¶ 26} The trial court next considered appellants' counterclaims. The court found (1) that Gemmell converted $36,663.15 of HP funds during 2010, (2) that Gemmell wrongly used HP funds to pay for the zip-line loan, (3) that "Gemmell should not have had [HP] pay" the zip-line loan and that "[t]he zip lines were Mr. Gemmell's capital contribution to [HP]", and (4) that Gemmell used $10,625.08 of HP funds during 2011 to pay the loan and that he used an additional $15,749.20 in 2012. The court did not, however, enter judgment in appellants' favor regarding their breach-of-contract claim, but instead found that Anthony's failure to perform his

obligations under the operating agreement and M&T's failure to perform its obligations under the lease meant that appellants could not establish a breach-of-contract claim against appellees.

**{¶ 27}** The trial court also found that Gemmell's use of HP funds to pay the zip-line loan unjustly enriched him, but concluded that the measure of damages is the same as the damages the court awarded for the conversion claim. The court also determined that Gemmell breached his fiduciary duties, but that appellants are not entitled to additional damages beyond the amount the court awarded for their conversion claim. The court also noted that appellants requested a return of Gemmell's unauthorized distributions, but the court found that the damages that it awarded for appellants' conversion claim adequately compensated them. The court also denied appellants' request for an accounting, finding that Gemmell's and Anthony's conduct made an accounting "impossible."

**{¶ 28}** The trial court additionally (1) denied appellants' request for a judicial dissolution because the court did not believe that any of the termination events set forth in HP's operating agreement had occurred, and stated that "under the facts which have been found, [the court] will not dissolve Hocking Peaks or Hocking Peaks Adventure Park", and (2) denied appellants' request for a judgment declaring that M&T is the owner of the zip lines.

**{¶ 29}** The trial court determined that appellants' damages totaled $31,518.71. The court calculated this amount by taking the total amount of funds Gemmell converted, $63,037.43, and then giving Gemmell a "50% credit." The court set-off the amount of appellants' damages, $31,518.72, from the amount of appellees' total damages, $567,670.64. The court thus found appellees are entitled to monetary damages in the amount of $536,151.92. The court also imposed the costs of the receiver's fees, $74,355.40, and the costs of the receiver's attorney fees,

$46,968.91, upon appellants. Finally, the court dismissed all claims against Kathy Koch, Clare Aitken, and Marlin Trace Investments, Ltd.[7] The court concluded with a statement that "[t]his is a final appealable order." This appeal followed.

{¶ 30} Before we may consider appellants' assignments of error, we first must consider whether we have jurisdiction to review the trial court's decision. *Whitaker–Merrell v. Geupel Co.*, 29 Ohio St.2d 184, 186, 280 N.E.2d 922 (1972) (explaining that appellate court must sua sponte consider jurisdiction); *State v. Kitchen*, 4th Dist. Ross No. 18CA3640, 2018-Ohio-5244, 2018 WL 6819501, ¶ 21 (addressing, sua sponte, jurisdiction to hear appeal). It is well-established that courts of appeals have jurisdiction to "affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Section 3(B)(2), Article IV, Ohio Constitution. "As a result, '* * * an order [or judgment] must be final before it can be reviewed by an appellate court. If an order [or judgment] is not final, then an appellate court has no jurisdiction.'" *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, ¶ 14, quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). If a court's order is not final and appealable, we therefore must dismiss the appeal. *Eddie v. Saunders*, 4th Dist. No. 07CA7, 2008–Ohio–4755, ¶ 11.

{¶ 31} "An order is a final, appealable order only if it meets the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B)." *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 21, citing *Gehm* at ¶ 15; *accord Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus; *Mayberry v. Chevalier*,

---

[7] We observe that appellees' amended complaint did not name Marlin Trace Investments, Ltd.

2018-Ohio-781, 106 N.E.3d 89 (4th Dist.), ¶ 9.

{¶ 32} Under R.C. 2505.02(B)(1), an order is a final order if it "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]" To determine the action and prevent a judgment for the party appealing, the order "must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989).

{¶ 33} Additionally, if the case involves multiple parties or multiple claims, the court's order must meet the requirements of Civ.R. 54(B) to qualify as a final, appealable order. *Chef Italiano*, 44 Ohio St.3d at 88. Under Civ.R. 54(B),

> [w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay.

Absent the mandatory language that "there is no just reason for delay," an order that does not dispose of all claims is subject to modification and is not final and appealable. *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989); Civ.R. 54(B).

{¶ 34} The purpose of Civ.R. 54(B) is "'to make a reasonable accommodation of the policy against piecemeal appeals with the possible injustice sometimes created by the delay of appeals[,]' * * * as well as to insure that parties to such actions may know when an order or decree has become final for purposes of appeal * * *." *Pokorny v. Tilby Dev. Co.*, 52 Ohio St.2d 183, 186, 370 N.E.2d 738 (1977), quoting *Alexander v. Buckeye Pipeline*, 49 Ohio St.2d 158, 160, 359 N.E.2d 702 (1977).

{¶ 35} The case at bar involves multiple parties and multiple claims. Our review reveals, however, that the trial court's decision disposes of some, but not all, of the claims and parties. For example, HP asserted a cross-claim against Gemmell, but the trial court's decision does not enter any judgment on the cross-claim. Moreover, appellees set forth multiple claims for relief in their amended complaint, but the trial court did not address all of those claims. We note that the court appears to have addressed the claims appellees raised in their first complaint, which the amended complaint superseded. *E.g., Wrinkle v. Trabert*, 174 Ohio St. 233, 238, 188 N.E.2d 587 (1963), quoting *Grimm v. Modest*, 135 Ohio St. 275, 20 N.E.2d 527 (1939) ("'[t]he substitution of an amended petition for an earlier one ordinarily constitutes an abandonment of the earlier pleading and a reliance upon the amended one.'"); *S. Ohio Risk Mgt., Inc. v. Michael*, 4th Dist. Jackson No. 05CA11, 2005-Ohio-5862, 2005 WL 2901784, ¶ 8 ("The allegations of the amended complaint supersede those of the original complaint"); *accord Kanu v. Univ. of Cincinnati*, 10th Dist. Franklin No. 18AP-517, 2018-Ohio-4969, 2018 WL 6505528, ¶ 20.

{¶ 36} Thus, we do not believe that the trial court's decision disposes of all claims. Consequently, its decision constitutes a final appealable order only if the court included an express determination that "there is no just reason for delay." Here, the trial court described its decision as a final appealable order, but did not include the "magic words" that "there is no just reason for delay." Although we recognize that the absence of this phrase may seem trivial, we nevertheless are obligated to follow well-established case authority. "Merely describing an order as final and appealable, without express reference to the language of Civ.R. 54(B), is not sufficient to satisfy the rule's certification requirement." *JP Morgan Chase Bank v. Stotler*, 1st Dist. Hamilton No. C-130720, 2014-Ohio-4238, 2014 WL 4792244, ¶ 10, citing *Internatl. Bhd.*

*of Elec. Workers, Local. Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007–Ohio–6439, 879 N.E.2d 187, ¶ 8, and *Daudistel v. Silverton*, 1st Dist. Hamilton No. C–120611, 2013–Ohio–2103, ¶ 8.   In the absence of the "magic words" that "there is no just reason for delay," the court's decision is interlocutory, and we must dismiss the appeal.   *Clark v. Butler*, 4th Dist. Ross No. 10CA3191, 2011-Ohio-4943, 2011 WL 4542157, ¶ 6.

{¶ 37} Additionally, to terminate an action a judgment must set forth the outcome of the dispute and contain a clear statement of the relief afforded to the parties.   *Burns v. Morgan*, 165 Ohio App.3d 694, 2006-Ohio-1213, 847 N.E.2d 1288 (4th Dist.), ¶ 8, citing *Harkai v. Scherba Industries, Inc.*, 136 Ohio App.3d 211, 215, 736 N.E.2d 101 (9th Dist. 2000).   The court's judgment need not ""''be encyclopedic in character, but it should contain clear language to provide basic notice of rights, duties, and obligations.''''   *Harkai*, 136 Ohio App.3d at 216, quoting *In re Michael*, 71 Ohio App.3d 727, 730, 595 N.E.2d 397 (11th Dist. 1991), quoting *Lavelle v. Cox*, 11th Dist. Trumbull No. 90–T–4396, 1991 WL 35642 (Mar. 15, 1991), (Ford, J., concurring).   "'[T]he content of the judgment must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case.'" *Id.*, quoting *Walker v. Walker*, 9th Dist. Summit No. 12978, 1987 WL 15591, *2 (Aug. 5, 1987).   ""''In other words, the judgment entry must be worded in such a manner that the parties can readily determine what is necessary to comply with the order of the court.''''   *Burns* at ¶ 10, quoting *Yahraus v. Circleville*, 4th Dist. Pickaway No. 00CA04, 2000 WL 33226190 (Dec. 15, 2000), quoting *Lavelle v. Cox*, Trumbull App. No. 90–T–4396, 1991 WL 35642 (Mar. 15, 1991) (Ford, J., concurring).

{¶ 38} "If the judgment fails to speak to an area which was disputed, uses ambiguous or

confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court." *Harkai*, 136 Ohio App.3d at 216, quoting *Walker* at *2. Accordingly, a judgment does not properly terminate an action when it is "ambiguous, confusing, and not certain in itself" *Clyburn v. Gregg*, 4th Dist. Ross No. 09CA3115, 2010-Ohio-4508, 2010 WL 3722260, ¶ 7; *Brown v. Brown*, 183 Ohio App.3d 384, 2009-Ohio-3589, 917 N.E.2d 301 (4th Dist.), ¶ 21. *See also* 62 Ohio Jurisprudence 3d, Judgments ("It is a fundamental rule that a judgment must be complete and certain in itself").

> Moreover, a "judgment" must be distinguished from a "decision." Indeed, pursuant to Civ.R. 54(A), a judgment "shall not contain a recital of pleadings, the magistrate's decision in a referred matter, or the record of prior proceedings." These matters are properly placed in the "decision." A decision announces what the judgment will be. The judgment entry unequivocally orders the relief.

*Harkai*, 136 Ohio App.3d at 216 (citations omitted).

{¶ 39} In the case sub judice, even if we assume for purposes of argument that the trial court had complied with Civ.R. 54(B), we do not believe that the trial court's decision sufficiently informs the parties and this court of each party's rights and obligations. We recognize that the trial court certainly set forth extensive factual findings and conclusions of law, and we fully appreciate the unenviable task the court faced. We do not believe, however, that the court unambiguously set forth a judgment that defines each party's rights and obligations. True, the court's judgment awards appellees $536,151.92 in damages. The court's judgment also denies appellants' request to dissolve HP. Nonetheless, the court's judgment does not fully and unambiguously inform the parties or this court of the amount of damages and the relief

granted to each party.   Instead, the court awarded all appellees a lump sum.

{¶ 40} Furthermore, at times the court's decision refers to a singular plaintiff, and at other times the decision refers to multiple plaintiffs.   Thus, while we might surmise that the court intended to limit certain parts of the damage award to certain plaintiffs, the court did not name the plaintiff or plaintiffs entitled to the damage award.   For example, we note that the decision does not clarify which appellee is entitled to damages as a result of Anthony's misappropriations of company funds.   The company assets Anthony converted and wrongfully distributed to himself would seem to belong first to the company.   *See* R.C. 1705.23 ("A member who knowingly receives any distribution or payment made contrary to the articles of organization or the operating agreement of a limited liability company *is liable to the company* for the amount received by him that is in excess of the amount that could have been paid or distributed without a violation of the articles or the operating agreement.") (emphasis added).   Yet the trial court's damage award for conversion of company assets appears to apply to appellees across the board.[8]

{¶ 41} Furthermore, the court's judgment does not explain whether it granted any relief to HP regarding its cross-claim against Gemmell.   Moreover, appellees named HP as a plaintiff in their amended complaint, yet it is not clear what judgment the court intended to enter in HP's favor, except to include HP in its award of monetary damages.   Furthermore, while the court seems to have determined that HPAP and HP are the same, the court did not explain the effect of this ruling so as to permit this court and the parties to understand HP's and HPAP's rights and obligations with respect to one another and with respect to Gemmell and Anthony.   We further

---

[8] We observe that the failure to define each party's rights and obligations might also give rise to the double-recovery issue appellants identify in their third assignment of error.

note some inconsistency in the decision that leaves us unable to adequately ascertain the parties' rights and obligations. The court determined that Gemmell owns the zip lines, but it also found that the zip lines were "Gemmell's capital contribution to [HP]." In this event, then, it would appear that the zip lines belong to the company and that the company would repay Gemmell's capital contribution as authorized in the operating agreement. But the court instead awarded Gemmell and Gem Coatings monetary damages to compensate them for the amount of money they paid towards the zip line loan and further found that Gemmell owns the zip lines. Reimbursing Gemmell for the amounts paid towards the loan without regard to the operating agreement provision regarding repayment of capital contributions suggests that Gemmell and Gem Coatings loaned the money to HP. The court, however, did not find that Gemmell loaned the money to the company. Also, finding that Gemmell owes the zip lines is inconsistent with the court's finding that the zip lines represent Gemmell's capital contribution to HP. These inconsistencies make it difficult to adequately ascertain the basis for the trial court's damage award.

{¶ 42} Once again, we certainly, without any hesitation or reservation, sympathize with the monumental task that the trial court faced when trying to sort through the disaster that Gemmell and Anthony created. Unfortunately, we have been unable to adequately ascertain each party's rights and obligations so as to permit a meaningful review.

{¶ 43} Accordingly, based upon the foregoing reasons, we must dismiss this appeal for lack of a final appealable order.[9]

---

[9] Because the trial court has not entered a final appealable order, its decision is an interlocutory order that is subject to modification. *Rice v. Lewis*, 4th Dist. Scioto No. 11CA3451, 2012-Ohio-2588, 2012 WL 2106528, ¶ 15.

APPEAL DISMISSED.

JUDGMENT ENTRY

It is ordered that the appeal be dismissed and that appellees and appellants equally divide the costs herein taxed. The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Presiding Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.