[Cite as *Gemmell v. Anthony*, 2024-Ohio-3129.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| Karry Gemmell, et al., | : | Case No. 22CA5 |
| Plaintiffs-Appellees, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Mark Anthony, et al., | : | |
| Defendants-Appellants. | : | **RELEASED 8/14/2024** |

_____
APPEARANCES:

Eugene F. Battisti, Jr. and Mary C. Ansbro, Battisti Ansbro, Columbus, Ohio, for appellant Mark Anthony.[1]

Kenneth R. Goldberg, Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA, Columbus, Ohio, for appellee Reg Martin.
_____
Hess, J.

{¶1}  Mark Anthony appeals from a March 30, 2022 judgment entry of the Hocking County Court of Common Pleas finding him in contempt for violating the court's orders regarding a receivership and imposing a sentence conditioned on the failure to purge the contempt.  Anthony presents four assignments of error asserting that the trial court committed reversible error when it (1) proceeded without jurisdiction, (2) determined that the receiver had standing to file a contempt motion, (3) failed to follow the facts of the case, and (4) made the purge conditions.  For the reasons which follow, we overrule the first assignment of error.  We overrule the second assignment of error in part and sustain it in part.  We overrule the third assignment of error in part.  However, we cannot fully

---

[1] Anthony's counsel moved to withdraw after briefing was completed, and we granted the motion.

resolve the third assignment of error because we cannot discern the basis for one of the court's findings and must remand for clarification. Our rulings regarding the second and third assignment of error render the fourth assignment of error moot. We affirm in part and reverse in part the March 31, 2021 entry underlying the finding of contempt[2] and the March 30, 2022 contempt entry to the extent explained below, and we remand to the trial court for further proceedings consistent with law and this decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} This is the sixth appeal in a case we have described as "the twisted tale of two business partners who have spent a staggering sum litigating which partner stole more money from Hocking Peaks, LLC (HP), a limited liability company formed in 2010." *Gemmell v. Anthony*, 2019-Ohio-469, ¶ 2 (4th Dist.). A review of the lengthy history of this matter is necessary to understand the present dispute.

{¶3} Karry Gemmell and Mark Anthony "formed HP to operate a zip line and adventure park on property owned by Anthony's company, M & T Property Investments, Ltd. (M & T)," *id.* at ¶ 2, which also contained Anthony's personal residence, *id.* at ¶ 3. Gemmell's company, Ohio ATV World, LLC, "contracted with Acrobranche U.S., Inc. to purchase and install the zip lines at a cost of $385,000." *Id.* at ¶ 2. Gemmell's company, GEM Coatings, LLC, "used its line of credit to make payments to Acrobranche." *Id.* at ¶ 2. HP's operating agreement provided it would have a 99-year lease so long as HP was engaged in its current business and that rent would be $500 per month. Gemmell and Anthony signed a lease between HP and M & T which was for a five-year term running

---

[2] The trial court issued two entries on March 31, 2021—one granting a motion to intervene and one construing the receiver's authority and approving a lease. Unless otherwise stated, all references to the March 31, 2021 entry in this decision refer to the latter entry.

from March 29, 2010, to March 29, 2015, set monthly rent at $500, and provided for renewal at HP's option. "After the park opened in 2010," Anthony and Gemmell's business relationship "rapidly deteriorated." *Id.* at ¶ 4. "Around August of 2012, Anthony was under the impression that he and Gemmell had agreed to end their business relationship. Anthony thus closed HP's bank account, opened a new bank account with HP's remaining funds, and started a new company, Hocking Peaks Adventure Park, LLC (HPAP). HPAP differed from HP in name and ownership only." *Id.* at ¶ 8.

A. Initial Legal Proceedings

**{¶4}** On March 6, 2013, Gemmell, HP, Gem Coatings, Ohio ATV World, and Claire Aitken (Gemmell's wife) filed a complaint against Anthony and Kathy Koch (Anthony's girlfriend).[3] Anthony filed counterclaims, and HP filed cross-claims against Gemmell. Also "[i]n early March 2013, Anthony and M & T's counsel sent Gemmell a letter notifying Gemmell that M & T had terminated HP's lease." *Id.* at ¶ 9. On June 18, 2013, the court granted a preliminary injunction requiring that a single bank account be established for HP and that Gemmell and Anthony sign off on withdrawals over $2,000. The court noted its order did not extend to HPAP, which was not a party.

**{¶5}** Subsequently, the plaintiffs filed an amended complaint which added HPAP and M & T as defendants and included claims for conversion, Anthony's breach of the operating agreement, unjust enrichment, Anthony's breach of fiduciary duties, unfair competition, business interference, Anthony's return of unlawful distributions, failure to provide access to HP's financial records, and a declaratory judgment. The plaintiffs

---

[3] The complaint mistakenly referred to HP as HPAP, and named Marlin Trace Investments, LTD (which had evidently been confused with M & T), John Doe, and Jane Doe as defendants. However, an amended complaint was later filed which removed those defendants and corrected HP's name.

asserted that they were entitled to a declaratory judgment that "the zip-lines and other physical equipment utilized by [HP] belongs to Plaintiffs, and that [HPAP] is the alter ego of [HP]." The prayer for relief sought compensatory and punitive damages, attorney fees, a declaration that HPAP is the alter ego of HP, a declaration that "the zip-line equipment and all other physical equipment utilized by [HP] is owned by Plaintiffs," and an order requiring the defendants to provide a complete accounting of HP's finances. Anthony and M & T filed counterclaims to the amended complaint.

**{¶6}** On October 16, 2013, the court issued an order barring the defendants from creating any new entity relating to the ownership, operation, or management of an adventure park or any business related to or competitive with HP or HPAP's activities until further order. On December 27, 2013, Anthony executed a lease between M & T and HPAP. On March 21, 2014, the court granted another preliminary injunction. The court found that about ten days after the first preliminary injunction hearing, Anthony dissolved HP to "avoid the application of any order of the Court as to the operation of [HP]." The court found Anthony took HP's assets and transferred them to HPAP in violation of HP's operating agreement. The court ordered that there be one bank account for HPAP and that neither Gemmell nor Anthony be permitted to withdraw money without both their written consent. On April 15, 2014, the court issued a nunc pro tunc entry adding a bond requirement to the March 21, 2014 entry. Anthony appealed both entries, but we later dismissed the appeal as moot because "the order concerning the parties' creation and operation of a single bank account" had "been replaced with a court-appointed receivership." *Gemmell v. Anthony*, 2014-Ohio-4183, ¶ 1, 8, 10 (4th Dist.).

## B.  State Court Receivership

{¶7}   On April 7, 2014, the plaintiffs moved the trial court to appoint a receiver for HPAP so that "current and future assets of that company, which were misappropriated from [HP] can be preserved and properly managed."  On June 13, 2014, the trial court issued an entry appointing Reg Martin receiver for HPAP and appointing counsel for Martin.  Anthony, M & T, and HPAP appealed this entry, and we affirmed it.  *Gemmell v. Anthony*, 2016-Ohio-2686, ¶ 1, 52 (4th Dist.).

{¶8}   On July 8, 2014, Martin filed his first report and notified the court that immediately after his appointment, he ceased HPAP's operations, primarily because the business had no liability insurance.  Martin also told the court that it was his understanding that the zip line operation was unsafe and that he was working to determine whether reopening was a viable option.  The report noted that HPAP was operating on real estate "owned by an entity totally controlled by Defendant, Mark Anthony."  This created "cause for concern," so Martin was preparing a motion for an order so that he was "not prevented from controlling [HPAP] and receivership assets under the terms of the initial lease agreement that is still in place."  The report noted that Martin hired a company to inventory and appraise HPAP's personal property and that it was his position that HPAP was the "successor company to the company started in 2010," so "all assets purchased * * * during the time period leading up to the receivership, are assets of the receivership."  On July 11, 2014, Martin filed his second report and notified the court that he had determined the business could be profitable.

{¶9}   The defendants then moved the court to stay the entry appointing Martin receiver during the pendency of their appeal from it.  Among other things, they argued

Martin's appointment impinged on their property rights and interfered with M & T's agreement to lease part of its real property to Wildwoods Adventure Park, LLC—an entity the trial court later found that Anthony was in the process of establishing to run the park in violation of the October 16, 2013 entry. They asserted that neither HP nor HPAP had any right to operate on M & T's property because both had defaulted on their leases with M & T.

{¶10} Martin moved for a hearing to show cause why Anthony should not be held in contempt. Martin alleged Anthony refused to provide him with unrestrained access to the premises, refused to assure him that Anthony's dogs would be locked up, and refused to terminate the proposed lease arrangement with Wild Woods. Martin argued that HP had a 99-year lease, and HPAP was HP's successor. He further argued that the court "should not allow Anthony's technical arguments regarding the leases to cover up the inequities that he has created."

{¶11} After the trial court conducted a hearing on the show cause motion, Martin withdrew it. However, the court ordered Anthony to let Martin enter M & T's land and bring others there, give Martin various keys and access cards, and restrain the dogs to a certain area around his personal residence. The court ordered Anthony and M & T to not enter any leases regarding the property without Martin's written consent and ordered Anthony to not create any entity during the pendency of the case without court approval. The court denied the motion to stay.

{¶12} On August 8, 2014, the trial court granted Martin's motion for authority to borrow money to fund the reopening of operations of HP/HPAP and authorized him to borrow up to $50,000. In October 2014, Martin filed his third report which contained an

inventory of assets in the receivership estate, which included zip line games on three courses, a golf course and water slide games, vehicles, and a variety of other items, like zip line harnesses and picnic tables. The defendants objected to the inventory. Martin filed additional reports in November and December 2014. His sixth report stated that if the park was reopened, he would operate "under the terms and conditions set forth in the original lease, as it has never been invalidated to the knowledge of the Receiver."

**{¶13}** In February 2015, Martin moved for authority to renovate and reopen the park and borrow additional funds for that purpose. The defendants opposed the motion. On March 26, 2015, the trial court issued an entry granting Maritn's motion. The entry stated that Martin was "authorized to borrow, in his discretion, funds up to an additional $100,000," "authorized to operate the park for up to five years or until the receivership is closed pursuant to future orders of the Court," "authorized to pay rent for the park premises in the amount of $500 per month," and "authorized to use cash flow from operations to pay for normal operations and thereafter to re-pay monies loaned, and Receiver and counsel for Receiver fees, once approved by the Court, and all remaining funds shall be held for distribution pursuant to future orders of the Court[.]" The entry prohibited the parties and their representatives "from interfering with the Receiver's efforts to renovate, reopen and operate the park and further from entering the site where the park is located with [sic] specific written consent from the Receiver[.]"

**{¶14}** Anthony and M & T appealed this entry, but we dismissed the appeal for lack of a final, appealable order. *Gemmell v. Anthony*, 2015-Ohio-2550, ¶ 1, 3 (4th Dist.). We explained that the entry did not affect a substantial right because it did "not make a final distribution of assets or terminate the receivership and it anticipates further action by

the receiver." *Id.* at ¶ 10. And even if the entry granted or denied a provisional remedy, it did "not determine the action and prevent a judgment in favor of the appellants," *id.* at ¶ 14, and the appellants would "have a meaningful and effective remedy by an appeal after the final judgment is reached," *id.* at ¶ 17.

{¶15} In April 2015, Martin filed his seventh report which set forth a plan for reopening the park and informed the court of "ancillary" issues involving Anthony. According to Martin, Anthony said that he considered Martin to be trespassing if he allowed anyone on the premises without first securing insurance for it. Martin noted that he needed access to the premises for various reasons. He also noted that after he shut down the park, he attempted to get insurance, but coverage was declined for various reasons, including that the premises was secured by a locked gate which prevented emergency access. Martin told the court that he intended to have insurance before reopening the park for business. Anthony also sent Martin's project manager a threatening email and made "insulting and disrespectful comments" about Martin. Martin was also "concerned that Mr. Anthony will allow his guard dogs to roam the property putting the Receiver and his associates at risk." Martin noted that he would file a contempt motion if Anthony "continues to attempt to impede progress in this matter." In August 2015, Martin filed his eighth report stating he had encountered unforeseen delays in reopening the park regarding matters like securing financing, but he was trying to reopen the park before the end of the current season.

C. Federal Court Receivership

{¶16} Evidently in July 2015, Jack Beatley bought the mortgage on M & T's property through his business, Timber View Properties, Inc. In September 2015, Timber

View initiated a foreclosure action against M & T in federal court and moved that court to appoint David Skrobot, an attorney who represented Anthony in a separate matter in 2012, receiver over the property. M & T consented to the appointment, and the federal court granted the motion. The next day, Skrobot named Anthony manager over the real property. In October 2015, Skrobot sent Martin a letter stating that Martin and his affiliates were to "cease and desist" from coming on the property, that Skrobot's agent, Anthony, would be commencing business activities on the property, that Martin was not to interfere with Anthony's abilities to act as Skrobot's agent, and that Martin was subject to a contempt action which may result in a fine and/or imprisonment if he disregarded Skrobot's orders. Martin notified the trial court of the federal receivership in a motion seeking authority to employ special counsel to advise him regarding the matter. It does not appear that the court issued a ruling on this motion.

### D. Bench Trial and Verdict

{¶17} In November 2016, the trial court conducted a bench trial. On March 21, 2018, the trial court issued a judgment entry setting forth its verdict. Anthony, M & T, and HPAP appealed, but in February 2019, we dismissed the appeal for lack of a final, appealable order. *Gemmell v. Anthony*, 2019-Ohio-469, ¶ 1, 43 (4th Dist.). We explained that the case involved multiple parties and multiple claims and that the trial court's decision disposed of some, but not all, of the claims and parties. *Id.* at ¶ 35. Therefore, the decision would only be a final, appealable order if the court included an express determination that "there is no just reason for delay" pursuant to Civ.R. 54(B). *Id.* at ¶ 36. The court did not do so, *id.*, and we explained that even if it had, we did not believe the

court's decision sufficiently informed the parties and this court of each party's rights and obligations, *id.* at ¶ 39.

**{¶18}** Evidently on August 7, 2019, M & T conveyed its real property by general warranty deeds to Evergreen Site Holdings, Inc., which is owned by Beatley. Then on August 29, 2019, the trial court issued another judgment entry regarding its verdict. The trial court dismissed all claims against Koch and all claims made by Aiken and Ohio ATV World. The court also dismissed HP's claims and cross-claims, finding that HP's "existence was terminated by being cancelled by the Ohio Secretary of State," so "damages and liabilities in this case should go to Mr. Gemmell and Mr. Anthony, not to an LLC that no longer exists under Ohio Law."

**{¶19}** The court then purported to address the remaining claims and counterclaims. The court awarded judgment in favor of Gemmell and against Anthony in the amount of $527,260.16 for conversion, which included $366,418.26 for the zip lines, $153,148.37 for lost profits from 2012-2016, and $7,693.53 for real estate taxes paid in 2011. The court allowed Anthony to set off $31,518.72 of that judgment for Gemmell's conversion of funds. The court ordered Anthony and "his joint and several tortfeasors," M & T and HPAP, to pay Gemmell the difference, $495,741.44. The court also declared that the zip lines were fixtures and thus owned by M & T as owner of the land.

**{¶20}** The court ordered Anthony, M & T, and HPAP to pay the receiver's fees of $74,355.50 and the receiver's attorney fees of $46,968.91, noting Anthony's "egregious behavior toward the receiver" after issuance of the March 26, 2015 entry. The court found Anthony "did all he could to prevent the park from reopening," including "locking gates," "threatening the receiver with trespassing charges," and "threatening him with guard

dogs." The court also believed Anthony and Beatley were friends and that "Anthony orchestrated the filing of the federal case to avoid the actions of the state receiver." The court created "a lien against the property that was subject of the receivership [sic], including all real estate owned by Defendants including that which may be owned by their LLCs" in order "to provide the receiver and his attorney with an interest in the receivership property."

### E.  Post-Judgment Events

{¶21}  Anthony, M & T, and HPAP appealed the August 29, 2019 judgment entry, but we dismissed the appeal on their motion. In May 2020, Evergreen and Eventuresencore Inc., dba Ultimate Zipline Adventures, entered a lease agreement regarding the property.  Then on February 19, 2021, Martin filed his ninth report.  Martin admitted it had been "approximately five years" since his last report, apologized to the court for "not submitting regular reports," but noted his belief that the court was "aware of the ongoing circumstances effecting [sic] this receivership."  Martin stated that soon after he filed his eighth report, his efforts to reopen the park "were brought to a sudden halt by a federal court filing."  He was served with an order which appointed Skrobot receiver in that case and "barred" Martin "from continuing his duties in this receivership matter." Martin stated that the federal order was "in effect" until September 26, 2019. Martin asserted that the state receivership "although dormant, was never closed or terminated." Martin also stated that he was "ready willing and able to reopen the zip line park" and was "in the process of entering into an agreement with [Evergreen]," which "has already spent $200,000 to repair and upgrade the zip line park and is in [a] perfect position to reopen the zip line park and make productive use of the receivership assets."

{¶22} Martin attached to his report a September 26, 2019 opinion and order by the federal court dismissing Timber View's foreclosure claims and vacating Skrobot's appointment. *See Timber View Properties, Inc. v. M&T Property Invests. Ltd.*, 2019 WL 4696386 (S.D. Ohio Sept. 26, 2019). The federal court found "the state court's appointment of a receiver with the power to enter, modify, manage, and exclude others from the portion of the property on which HPAP was operating removed that same portion of the property from [the federal court's] jurisdiction for the pendency of the state court receivership." *Id.* at *5. And "[a]lthough final judgment has been entered in the state court action, it does not appear from the docket that the state court has yet terminated Martin's receivership over HPAP." *Id.* at *4. Thus, "Martin's receivership over HPAP therefore continues," *id.* at *4, and the federal court "does not now, nor did it at the time the federal action was commenced, have the required subject-matter jurisdiction to adjudicate Timber View's foreclosure claims, *id.* at *5. And because the federal receivership appointment arose out of the foreclosure claims, the court also lacked jurisdiction to make the appointment. *Id.*

{¶23} On March 9, 2021, Martin and Eventuresencore executed a lease agreement, subject to court approval, whereby Martin agreed to rent the real property and equipment there to Eventuresencore for a term commencing on January 1, 2021, and ending on December 31, 2025. On March 18, 2021, the trial court issued an order stating that it had reviewed Martin's ninth report, that it found the report "to be appropriate and in compliance with the Orders of the Court and local rules," that "[n]o responses or objections were filed," and that the report was "hereby APPROVED." On March 30, 2021, Eventuresencore moved for leave to intervene for the purpose of filing a motion to

construe Martin's authority. Eventuresencore asserted that it was operating the park but that it had lease agreements with two lessors—Evergreen and Martin. Eventuresencore asserted that there was "some question about [Martin's] authority to enter into a lease agreement based upon ambiguity of the entry dated March [26], 2015."[4] And without clarification of Martin's authority, Eventuresencore could not protect its leasehold interest in the property.

{¶24} On March 31, 2021, the trial court granted Eventuresencore's motion, and Eventuresencore moved the court to construe Martin's authority and approve the March 9, 2021 lease. Also on March 31, 2021, the trial court issued an entry in which it found Martin had "ongoing authority pursuant to this Court's orders of June 13, 2014, and March [26], 2015,"[5] approved the lease agreement between Eventuresencore and Martin "as a valid exercise of the Receiver's authority," and stated that "[t]he receivership shall remain in effect indefinitely until further order of this Court."

### F. Contempt Action

{¶25} On April 6, 2021, Martin moved the court for an order requiring Anthony to appear and show cause as to why he should not be held in contempt and for an order finding him in contempt. Martin requested a hearing to determine whether Anthony should be held in contempt "for his interference with the Receiver's efforts, through his tenant, Eventuresencore, Inc., to open and operate the zipline park on the premises that is the subject of this receivership." Martin asserted that Anthony violated the trial court's

---

[4] The motion incorrectly stated that the date of the entry was March 27, 2015.
[5] The March 31, 2021 entry incorrectly indicated the date of the second entry was March 27, 2015. For ease of discussion, in the remainder of this decision, we will treat the March 31, 2021 entry as if it stated that Martin had ongoing authority pursuant to the court's "orders of June 13, 2014, and March 26, 2015."

March 26, 2015[6] and March 31, 2021 entries "as more fully set forth in the attached Affidavit of Dave Stemen," president of Eventuresencore. Martin cited case law for the proposition that no one has the right to interfere with a receiver's possession and custody of receivership assets and that any attempt to interfere with or obstruct the receiver's possession is subject to punishment for contempt.

{¶26} Stemen averred that: (1) Anthony made threats of violence against the park in the past year; (2) Stemen had observed or seen video of Anthony's "continued interference with the business operations, including removing numerous items from the park[']s operation including a harness building"; (3) the park had to close in November 2020 because Anthony blocked the safety access roadway with a large trailer; (4) Anthony dumped a large pile of trash in the field used as the customer parking lot on or about April 1, 2021; (5) Anthony used heavy equipment to move containers used as road bridges from the park to the parking lot; and (6) Anthony used a trailer to take custom made wood materials necessary for park operations.

{¶27} In September 2021, the court conducted a hearing on the matter. At the beginning of the hearing, Anthony's counsel moved to dismiss the contempt action on several grounds, including that the receivership had terminated, that Martin was barred from continuing as receiver because he was a judgment creditor, and that Martin had "no receivership authority over the land or the fixtures on that land," so he "cannot give a lease." The trial court summarily denied the motion.

{¶28} The court heard testimony from Stemen and Anthony about the alleged contempt and from John Perry Griffith, a private investigator and process server. The

---

[6] The motion incorrectly indicated the March 26, 2015 entry was issued on March 27, 2015.

court also heard testimony from Martin, who stated that when he was appointed, "I had a lease * * * that was still in place that gave me full authority over all lines, over all equipment, over running that park, absolutely completely." He testified that when the federal receiver was released "that action stated that I was put back in as receiver, that I was to continue as receiver." It was his position that "everything was to go back in place," and he was "continuing on under the lease." Subsequently, there was discussion about whether Martin could be questioned about his ability to grant a lease. At one point, Martin's attorney stated that "it's never been a dispute what authority the receiver has on the property * * *." The trial court stated, "Right." The court also noted that Anthony was bringing up the issue "on the morning of a contempt hearing that's been scheduled for a lengthy period of time" when it "could've been covered a long time ago in written proceedings." Anthony's counsel later made another motion to dismiss the contempt action, in part because Martin lacked authority to lease the land. The court summarily denied the motion.

{¶29} After the hearing, the court ordered Anthony to submit written arguments regarding the expiration of the receivership and whether "the Federal Court stay" and/or his actions of performing work for Eventuresencore "would estop him from claiming that the Receivership had expired." Among other things, Anthony asserted that there was no federal stay and that his work for Eventuresencore did not estop him from claiming the receivership expired because that work predated Martin's involvement with Eventuresencore. Anthony asserted that it "may actually be Martin who is estopped from challenging whether or not his appoint [sic] continues" based on his inaction "from August 29, 2019 until the instant dispute."

## G. Contempt Judgment

{¶30} On March 30, 2022, the trial court issued a judgment entry regarding the contempt action. The court concluded that the receivership had not terminated. The court stated that its "review of the record in this case and the reports of the Receiver strongly leads to the conclusion that the receiver has been unable to operate the park for the five-year period envisioned by the June 13, 2014 order. In fact, the receivership has had very little chance to operate the park at all."[7] The court found that "to terminate the receivership," Anthony therefore had "to show that the receiver has operated the park for five years. He has not met this burden." So "at this point, in order to terminate the receivership, this Court would need to order the receivership closed. The Court has not done this." The court concluded that Martin could continue as receiver even though the court gave him "an interest in the property at issue." The court also rejected the contention that Martin was "estopped from arguing that the receivership is valid because [he] took no action on the August 29, 2019 judgment entry until April 6, 2021." The court noted that Anthony's "actions towards the receiver have included: locking the park gates, threatening the receiver with trespassing charges, and threatening the receiver with guard dogs." He also "orchestrated" the filing of the federal lawsuit and appointment of the federal receiver, who gave Anthony full access to the park and authority to exclude others from it. The court stated that "[u]nder these circumstances, Mr. Anthony's arguments as to the receivership having been terminated are overruled."

{¶31} The court summarized testimony from the contempt hearing. The court noted that Eventuresencore entered a lease with Martin "as to the operation of a zip line

---

[7] The five-year language is in the March 26, 2015 entry, not the June 13, 2014 entry.

park at the premises that is the subject of the receivership." The court noted the following

events as testified to by Stemen:

- Stemen hired Anthony to assist "with getting the park up and running again," but the business relationship ended in August 2020. Stemen asked Anthony not to enter the portion of the park that had the zip line business on it, but park cameras photographed him there.

- In August 2020, Stemen asked Anthony to move a bus in the parking lot because it was an eyesore. Anthony parked it in the access road, blocking access to the paintball area and a new zip line area.

- In August 2020, Anthony sent Stemen a text stating he was going to cut the zip lines down. Around the same time, Stemen's son was nearly injured due to a problem with one of the lines. Anthony and Stemen exchanged texts about this, and Anthony said, "It was a test. See if you find it."

- On or about October 3, 2020, a skid steer which belonged to Anthony or one of his LLCs was photographed moving picnic tables near the harness barn.

- In November 2020, someone removed a zip line to move a building from a location in the park to an access road, damaging the road. Stemen had video of Anthony and one of his sons moving the building to the road and of Anthony moving the building off the road about 1½ weeks later. The park was closed about 2½ months due to the road blockage and need to reinstall the zip line and have it inspected.

- In November 2020, someone moved a container the park used as a bridge next to some zip lines, creating a hazard which made the zip lines unusable. Whoever moved the container left bulldozer tracks, and Stemen's cameras had recorded Anthony operating a bulldozer throughout the property on numerous occasions.

- In November 2020, Anthony took a picnic table from the deck of the park's office building. Stemen never saw the picnic table again.

- On or about March 7, 2021, Anthony moved the harness barn, which is critical to the park's operation, outside the park. In doing so, he knocked out the park's electric power and damaged the pillars that were the foundation for the harness barn. Stemen had to hire workmen to restore power, spend $1,600 to move the harness barn back, and make repairs once the barn was back in place.

- In April 2021, Stemen contacted Rumpke to have a dumpster removed from the parking lot. Before Rumpke came, Anthony dumped the trash in the dumpster into the parking lot, creating an eye sore, and removed the dumpster.

- Various items, including buildings and bridges were moved to the parking lot, damaging the parking lot and road system and creating an eye sore.

- The zip line park kept spare wooden parts on hand for the zip line course. Someone removed the parts from their storage area. They were found "right up against" Anthony's house.

- Anthony's son blocked an access road with a hearse and blocked Stemen from moving a mower by standing in front of it.

- On several other occasions, access roads on park property were blocked by vehicles.

{¶32} With respect to Anthony's testimony, the court noted that Anthony introduced an agreement between himself, Stemen, and Stemen's son in which Anthony was to get 50% of the profits from the park's operation and provide picnic tables, harnesses, and other items for reopening the park. The court stated that "when a business is placed in a receivership, all the business's property is in the receivership" and found that "Anthony maintaining that the harnesses, picnic tables, and other property that are part of the receivership estate, are actually property that he can control, is a serious violation of this Court's orders." The court noted Anthony claimed equipment in a certain area of the park belonged to him, but the court found it "is part of the receivership." The court summarized Anthony's testimony regarding Stemen's allegations. The court then found Stemen credible and Anthony incredible.

{¶33} In its conclusions of law, the trial court indicated the matter was a civil contempt proceeding. The court also stated:

> The general rule in Ohio is that the Court will protect against all interference with the custody and authority of its receiver as to all assets lawfully within the receiver's possession or control. * * * Without the Court's permission, no one has the right to interfere with the receiver's possession and custody of receivership assets. * * * Interference or obstruction of the possession of assets subjects the disturber to punishment for contempt. * * *

R.C. 2705.02 clearly states that its provisions apply to not only the orders of this Court but also as to the lawful process, order, rule or command of an officer of the Court. In <u>Macey v. Dudas</u>, 70 Ohio Law Abs. 312 (1954), the Court of Appeals for Cuyahoga County held that a court appointed administrator was an officer under R.C. 2705.02 and that interference with the administrator was contempt of court. This Court finds that interference with the attempts of the receiver, through a lease holder, to operate the zip line park is also contempt.

Therefore, Mr. Anthony is in contempt for his constant disobedience and resistance to this Court's lawful orders, judgments and commands of March [26], 2015 and March 31, 2021. * * *[8]

The court sentenced him to 30 days in jail and a $250 fine. The court found the sentence

was subject to Anthony's "right to purge" under the following conditions:

(1) Mr. Anthony is ordered to follow this Court's orders of March [26], 2015 and March 31, 2021;

(2) Mr. Anthony is ordered not to come on to the zip line park, without the express written consent of this Court's receiver;

(3) Mr. Anthony is ordered to return any and all property belonging to the zip line park by 5:00pm on April 5, 2022. This zip line property includes, without limitation, picnic tables, harnesses, and all other personal property that was used to operate the zip line park;

(4) Mr. Anthony is to vacate and not return to the residence located at 15111 State Route 664 South, Logan, Ohio 43138;

(5) Mr. Anthony is ordered to remove from the zip line property and 15111 State Route 664 South, Logan, Ohio 43138, all bulldozers, skid steers, and other heavy equipment owned by him or by any LLC that he owns and/or controls. This is to be done by 5:00pm, April 5, 2022;

(6) Mr. Anthony is ordered not to enter into any lease with any person, corporation, partnership, LLC, or other organization as to the zip line park located on State Route 664 South, Logan, Ohio 43138;

---

[8] The March 30, 2022 contempt entry incorrectly states that the date of the first entry was March 27, 2015. For ease of discussion, in the remainder of this decision, we will treat the March 30, 2022 entry as if it stated Anthony was in contempt for violating the courts "commands of March 26, 2015 and March 31, 2021."

(7) Mr. Anthony is to pay the attorney's fees of the receivership and costs as to this contempt action within 30 days of the date of the approval by the Court of the amount of these fees.

This appeal followed.

## II.  ASSIGNMENTS OF ERROR

**{¶34}**  Anthony presents four assignments of error:

First Assignment of Error:  The trial court committed reversible error when it proceeded without jurisdiction.

Second Assignment of Error:  The trial court committed reversible error when it determined that Reg Martin had standing to file a motion for contempt.

Third Assignment of Error: The trial court committed reversible error when it failed to follow the facts of the case.

Fourth Assignment of Error:  The trial court committed reversible error in making the purge condition [sic].[9]

## III.  CONTEMPT PRINCIPLES

**{¶35}**  The Supreme Court of Ohio has held that "a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 2014-Ohio-4254, ¶ 23.  The Supreme Court has also held that where a non-appealable interlocutory order results in a judgment of contempt which is a final, appealable order, an appeal from that judgment "presents to the appellate court for review the propriety of the interlocutory order which is the

---

[9] The first, second, and third assignments of error are taken from page vi of the appellant's brief.  The fourth assignment of error is taken from pages iii and 21 of the appellant's brief.  All the assignments of error are stated differently elsewhere in the brief.  We have quoted the versions which appear to best comport with Anthony's arguments.

underlying basis for the contempt adjudication." *Smith v. Chester Twp. Bd. of Trustees*, 60 Ohio St.2d 13 (1979), paragraph one of the syllabus.

**{¶36}** "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001) ("*Russo*"). " ' "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." ' " *Id.*, quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. "Generally, a trial court possesses broad discretion when it considers a contempt motion." *Jones v. Jones*, 2021-Ohio-1498, ¶ 28 (4th Dist.). "Consequently, absent an abuse of discretion, an appellate court will ordinarily uphold a trial court's contempt decision." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23.

**{¶37}** "In general, '[p]roceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these.' " *Liming v. Damos*, 2012-Ohio-4783, ¶ 11, quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202 (1973). "However, most courts distinguish between civil and criminal contempt proceedings." *Russo* at 554. "Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction." *Liming* at ¶ 12. "Criminal contempt sanctions are unconditional, punitive in nature, and designed to vindicate the authority of the court." *Docks Venture, L.L.C.* at ¶ 14. "Civil

contempt sanctions involve a conditional penalty * * * 'designed for remedial or coercive purposes and are often employed to compel obedience to a court order.' " *Id.* at ¶ 15, quoting *Russo* at 555.

**{¶38}** " 'Obedience to judicial orders is an important public policy.' " *Superior Office Space, LLC v. Carpenter*, 2023-Ohio-967, ¶ 54 (4th Dist.) ("*Superior*"), quoting *Lepore v. Breidenbach*, 2015-Ohio-2929, ¶ 23 (1st Dist.).  But if the order underlying a finding of contempt "is void, the violation of the order is not contempt." *In re Guardianship of Jadwisiak*, 64 Ohio St.3d 176, 184 (1992).  "[A] void judgment is one entered by a court lacking subject-matter jurisdiction over the case or personal jurisdiction over the parties." *State v. Hudson*, 2020-Ohio-3849, ¶ 11.

**{¶39}** "We have stated that ' "[a]n order issued by a court with jurisdiction must be obeyed '* * * regardless of whether such power was imprudently or prematurely exercised * * *' and '* * * however erroneous the action of the court may be, until the order is reversed by orderly and proper proceedings.' " ' " (Citation omitted and ellipses sic.)  *Superior* at ¶ 54, quoting *Slone v. Slone*, 1998 WL 191840, *2 (4th Dist. Mar. 31, 1998), quoting *State v. Moll*, 1992 WL 2539, *3 (6th Dist. Jan. 10, 1992).  "And we have stated that, 'an erroneous order is no defense to a charge of contempt.' " *Id.*, quoting *Slone* at *2.

**{¶40}** "However, '[d]epending on the circumstances of a case, a finding of civil contempt may not survive if the underlying judgment or order is reversed.' " *Id.* at ¶ 55, quoting *Foley v. Foley*, 2006-Ohio-946, ¶ 35 (10th Dist.), and citing *Slone* at *2, fn. 4 (explaining that this court is "aware that in some contexts authorities hold that a civil contempt cannot survive reversal of the underlying order" but finding "application of this rule to be inappropriate under the facts" of the case).  " 'In civil contempt cases where the

underlying order or judgment is reversed, the purpose of the punishment may be frustrated because the punishment can no longer operate as to coerce or encourage the contemnor to obey the prior order of the court.' " *Id.*, quoting *Foley* at ¶ 35. " 'In contrast, the purpose of a punishment for criminal contempt would not be frustrated if the underlying order of judgment of a trial court were reversed because the punishment is intended to vindicate the authority of the trial court and punish the contemnor.' " *Id.*, quoting *Foley* at ¶ 35.

## IV.  FIRST ASSIGNMENT OF ERROR

**{¶41}** In the first assignment of error, Anthony contends that the trial court committed reversible error when it proceeded without jurisdiction.  Anthony maintains that the subject-matter jurisdiction of common pleas courts is limited to live cases or controversies.  He asserts that the case or controversy between the parties in this matter has been "resolved as a matter of law" because the trial court has "repeatedly recognized" that it rendered a final judgment on August 29, 2019.  He further asserts that under the termination of jurisdiction principle, once the trial court issued the final judgment, it lost jurisdiction to proceed with any aspect of the case.  Therefore, he claims that all entries the court docketed after August 29, 2019, including the March 31, 2021 entry and March 30, 2022 entry, are void, that the entries should be vacated, and that the case should be terminated.  He also asserts that once the trial court entered the final judgment, the court's prior receivership entries could no longer be enforced "by contempt or otherwise." Anthony claims these entries "merged out of existence" because they were "not expressly incorporated into the final judgment."

{¶42} The underlying premise of Anthony's arguments—that the August 29, 2019 judgment entry is a final judgment on the merits of the parties' claims—is incorrect. The trial court characterized the August 29, 2019 entry as "a final appealable order that outlines all of the parties' claims and * * * renders judgment as to each and every claim in language that is sufficiently clear to provide the parties with basic notice of their rights, duties, and obligations." But the entry does not dispose of all the claims. The plaintiffs requested a declaratory judgment that HPAP was the alter ego of HP and that "the zip-line equipment and all other physical equipment utilized by [HP] is owned by Plaintiffs." The August 29, 2019 judgment entry resolved the declaratory judgment claims of Aitken, HP, and Ohio ATV World as the trial court dismissed all their claims. However, the entry did not fully resolve the remaining declaratory judgment claims of Gemmell and Gem Coatings. The trial court stated:

> As to the declaratory judgment cause of action in which Mr. Gemmell asks this court to declare who owns the zip lines, this court has no choice but to find that the zip lines are fixtures, and thus owned by M&T, not by Mr. Gemmell. Yes, Mr. Gemmell paid for the zip lines. Yes, Mr. Anthony unilaterally prevented Mr. Gemmell from benefitting [sic] from the zip lines. But because the zip line are attached to M&T's real estate, this court has no choice but to find that the zip lines belong to M&T.

The court did not resolve whether Gemmell and Gem Coatings were entitled to a declaration that HPAP was the alter ego of HP or a declaration that they owned any equipment utilized by HP aside from the zip lines.

{¶43} We observe in his appellate brief, in challenging the purge conditions, Anthony asserts that the August 29, 2019 entry "was silent as to the disposition of abandoned personal property of [HP] such as the harnesses, or any other equipment that might have been left there and abandoned in 2015 when the original lease expired." He

also asserts "the parties['] liabilities as to each other involving the business and its discontinuance were reduced to a monetary judgment, there was no judgment with respect to personalty of [HP] such as zipline harnesses, except that the ziplines were ordered to be the property of not [HP] but [M & T] the prior owner of the real estate, as a fixture to the real estate." Thus, Anthony acknowledges the August 29, 2019 entry does not address HP's equipment aside from the zip lines, though he fails to recognize the impact of that fact on the finality of the August 29, 2019 judgment.

{¶44} Because the trial court has not resolved all the parties' claims in this case, it has not issued a final judgment on the merits. Therefore, even if we agreed with Anthony that a trial court's issuance of a final judgment on the merits deprives the court of jurisdiction to proceed with any aspect of the case and makes prior receivership orders not expressly incorporated into the final judgment unenforceable, his arguments would still lack merit. Because the premise underlying Anthony's arguments is incorrect, we reject his arguments and overrule the first assignment of error.

V. SECOND ASSIGNMENT OF ERROR

{¶45} In the second assignment of error, Anthony contends that the trial court committed reversible error when it determined that Martin had standing to file a motion for contempt. First, Anthony asserts that the receivership has terminated. Anthony maintains that in the June 13, 2014 entry, the trial court "limited the Receiver to a maximum of five years, unless terminated sooner." Anthony asserts that the court "acknowledged that it was a maximum five (5) year term and only questioned whether the five (5) year term could have been considered stayed by virtue of the Federal Court case." Anthony asserts that the federal court did not stay the state court proceedings, that

Evergreen and M & T agreed the federal case would be stayed pending resolution of the state case, and even if they had not, the state case had priority over the federal case because the state case was filed first. He maintains that even though the trial court acknowledged "some interference to the receiver's authority may have occurred," it "did not in its final judgment entry, extend the time for the receiver" or "make the appointment indefinite." Thus, "the June 13, 2014 order with its five (5) year limit was merged into the final order," and Martin's appointment expired on June 13, 2019.

{¶46} Alternatively, Anthony asserts the receivership terminated on August 29, 2019. Anthony claims the appointment of a receiver is ancillary to the main action, so "[o]nce the course of the main action has ended the ancillary or dependent receivership necessarily ends." He asserts that the August 29, 2019 entry was "totally dispositive of the issues involving [HP] and the zipline business" and that "no provision was made in the final judgment entry for any continuation of the receivership that had already abandoned the zipline business in June of 2014." Thus, he claims the receivership terminated as a matter of law when the trial court issued its final judgment on August 29, 2019.

{¶47} Next, Anthony asserts that Martin lacks standing because he is a judgment creditor. Anthony asserts that once the trial court issued the August 29, 2019 judgment entry and gave Martin an interest in the receivership property, he became a judgment creditor. Anthony claims Martin has an unwaivable conflict of interest because he "must decide whether to pay himself, or pay another creditor." Anthony asserts that "based upon the [unwaivable] conflict of interest, Martin cannot continue as Receiver after the August 29, 2019 Judgment Entry, and therefore lacks standing to bring a contempt

action." Martin relies on R.C. 2735.02, Prof.Cond.R. 1.7, *Real Estate Capital Corp. v. Thunder Corp.*, 31 Ohio Misc. 169 (C.P. 1972), and *Dyckiewycz v. Tremont Ridge Phase 1 Ltd. Partnership*, 2012-Ohio-5173 (8th Dist.), to support his position. [*Id.*]

{¶48} Finally, Anthony asserts that Martin lacks standing because he is not the "real party in interest" to the contempt claims, Eventuresencore is. Anthony maintains that "a receiver that is appointed in the place of a company has only the same rights that the company has." Anthony claims that when Martin was appointed receiver for HPAP, it was leasing part of the real property then owned by M & T to operate a zip line business. Therefore, "at the time of his appointment, and prior to the expiration of [HP's] lease on March 29, 2015, Reg Martin was a tenant of the real estate not an owner." Anthony asserts that "as referenced in the August 29, 2019, Final Judgment Entry the [HP] lease was terminated and not renewed." Therefore, "neither Reg Martin nor [HPAP] have any legal title interest or leasehold interest in the property," so "neither of them could claim any interference with any possessory interest in the real estate[.]"

{¶49} Anthony maintains that the claims of interference asserted by Martin "[c]learly * * * belonged to Eventuresencore." Anthony asserts that the claims relate to Eventuresencore's "zipline business and operations in 2020" and are based on Eventuresencore's "possessory rights in the property arising from its lease with Evergreen – the true and legal title owner of the real estate." Anthony asserts that Eventuresencore raised the same claims in a separate case filed March 4, 2021, *Eventuresencore, Inc. v. Anthony*, Case No. 21CV0018. Anthony claims that case was filed before Eventuresencore had a "sham lease with Reg Martin that could then be utilized to improperly repackage Eventuresencore's claims into claims of contempt by Reg Martin in

this case." He asserts that the lease between Evergreen and Eventuresencore, "taken together with the complaint of interference filed" in Case No. 21CV0018 "legally estops each claim of interference asserted by Reg Martin which is an alleged injury of Eventuresencore not the dissolved business of [HP]." He asserts that jurisdiction "attached" to the claims of interference in Case No. 21CV0018, so "there is no standing or jurisdiction in this case to hear much less enforce those claims." In addition, he asserts the March 31, 2021 entry is "wholly unconstitutional and void as it was entered without any jurisdiction or any personal jurisdiction as to Evergreen."

### A. Standing Principles

**{¶50}** "Generally speaking, standing is '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 8, quoting *Black's Law Dictionary* (10th Ed. 2014). " 'It is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless [the party] has, in an individual or representative capacity, some real interest in the subject matter of the action.' " *Id.*, quoting *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179 (1973). "At a minimum, common-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief." *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 12 ("*OCC*"), citing *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22.

**{¶51}** Lack of standing impacts the trial court's jurisdiction over a particular case, not its subject-matter jurisdiction. *Bank of Am., N.A. v. Kutcha*, 2014-Ohio-4275, ¶ 22. "Because standing to sue is required to invoke the jurisdiction of the common pleas court,

standing is determined at the commencement of the action * * *."  *Chase Home Fin., L.L.C. v. Dunlap*, 2014-Ohio-3484, ¶ 8 (4th Dist.), citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 24-26.  "Standing ' " 'is not dispensed in gross;' " ' it must be demonstrated for each claim and each form of relief."  *OCC* at ¶ 13, quoting *Preterm-Cleveland, Inc. v. Kasich*, 2018-Ohio-441, ¶ 30, quoting *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734 (2008), quoting *Lewis v. Casey*, 518 U.S. 343, 358, fn. 6 (1996).  The existence of "standing is a question of law, which we review de novo."  *Id.* at ¶ 12.

### B. What is the Impact of Eventuresencore's Separate Lawsuit?

**{¶52}** Anthony suggests the trial court lacks subject-matter jurisdiction over the contempt action because jurisdiction first attached to the contempt claims in a separate case Eventuresencore initiated in the trial court.  This argument appears better suited to the first assignment of error than the second assignment of error, but in any event, it is meritless.  "The jurisdictional-priority rule provides that as between state courts of concurrent jurisdiction, the tribunal whose power is first invoked acquires exclusive jurisdiction to adjudicate the whole issue and settle the rights of the parties."  *State ex rel. Consortium For Economic & Community Dev. for Hough Ward 7 v. Russo*, 2017-Ohio-8133, ¶ 8.  "[T]he jurisdictional-priority rule has no applicability when the cases are pending in the same court * * *."  *Id.* at ¶ 14.  Therefore, any separate lawsuit Eventuresencore filed in the trial court has no impact on the trial court's subject-matter jurisdiction over the contempt action.

### C. Has the Receivership Terminated?

{¶53} The contention that Martin lacks standing because the receivership has terminated lacks merit. When the trial court appointed Martin as receiver in the June 13, 2014 entry, the court placed no time limit on the receivership. The March 26, 2015 entry also placed no time limit on the receivership itself, though as we will discuss below, the entry did place a five-year time limit on Martin's authority to operate the park, which expired. However, Martin had other authority. In the appeal from the June 13, 2014 entry appointing Martin as receiver, we rejected the contention that the entry was impermissibly vague because it did not set forth his powers and duties. *Gemmell v. Anthony*, 2016-Ohio-2686, ¶ 49-51 (4th Dist.). We explained the version of former R.C. 2735.04 which was in effect when Martin was appointed did not require that a receiver's powers be set forth in the order of appointment. *Id.* at ¶ 50. We further explained that some of Martin's "duties were specified" in former R.C. 2735.04, *id.* at ¶ 50, which provided that " '[u]nder the control of the court which appointed him, * * * a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts respecting the property as the court authorizes,' " *id.* at ¶ 49. And even if a final judgment on the merits operated to terminate a receivership, as previously explained, the August 29, 2019 judgment entry is not a final judgment on the merits. Therefore, the receivership is intact.

D. What is the Impact of Martin's Judgment Creditor Status?

{¶54} The contention that Martin lacks standing because he is a judgment creditor lacks merit. Anthony cites no legal authority which stands for the position that a receiver is automatically removed from that position by virtue of becoming a judgment creditor. So

even if there were merit to the notion that Martin should not continue as receiver because he is a judgment creditor, that would not change the fact that he has been the receiver throughout the duration of this case, including at the time he filed the contempt motion.

### E. What is the Scope of Martin's Authority?

#### 1. Authority under the June 13, 2014 Entry

{¶55} The trial court correctly found that Martin had ongoing authority pursuant to the June 13, 2014 entry. In that entry, the court appointed Martin receiver, and by virtue of that appointment, he had the powers enumerated in former R.C. 2735.04. *See Gemmell v. Anthony*, 2016-Ohio-2686, ¶ 49-50 (4th Dist.). Because the receivership never terminated, those powers continue, including the power to take and keep possession of property.

#### 2. Authority under the March 26, 2015 Entry

{¶56} The trial court erred when it found that Martin had ongoing authority to operate the park pursuant to the March 26, 2015 entry. If a court order "is clear and unambiguous, * * * the court should apply the order as it is written. Appellate review of such a matter is *de novo*. * * * [I]f an ambiguity exists, the meaning of the court's order is made a factual question. In review of a trial court's factual findings in this regard, we defer [to] its judgment." *In re Wilson*, 1999 WL 252799, *13 (2d Dist. April 30, 1999).

{¶57} The March 26, 2015 entry is clear and unambiguous. The entry states that Martin is "authorized to operate the park for up to five years or until the receivership is closed pursuant to future orders of the Court." Nothing in this language suggests the five-year time limit only runs when Martin in fact operates the park. Therefore, Martin had

authority to operate the park until March 26, 2020, unless the court issued an order terminating the receivership before then, which it did not do.

{¶58} When the trial court issued the March 31, 2021 entry, it gave no explanation for its finding that Martin had ongoing authority pursuant to the March 26, 2015 entry. At one point during the contempt hearing, when Anthony's counsel argued that the receivership terminated in March 2020, the trial court stated that its recollection was that "nobody could do anything about anything in regard to this for years because there was that federal order which [Anthony] obtained. And as such, I don't think that time counts." The court also stated, "People involved in the federal order got on [sic] order out of the federal court that nobody was to interfere, including the -- including the receiver. So a good deal of the time of the receivership was consumed by this receiver not being able to do anything because of the federal order." Then in the contempt entry, the court stated:

> Mr. Anthony maintains that the "up to five years" language "expressly limited" the receivership and that it caused the receivership to expire exactly five years after the order was filed. This Court's review of the record in this case and the reports of the Receiver strongly leads to the conclusion that the receiver has been unable to operate the park for the five year period envisioned by the [March 26, 2015] order. In fact, the receivership has had very little chance to operate the park at all. Therefore, in order to terminate the receivership, this Court finds that Mr. Anthony would be required to show that the receiver has operated the park for five years. He has not met this burden.[10]

However, as Anthony points out, there was no stay of the state case due to the federal case.

{¶59} Martin asserts that "[t]he federal case, in effect, stayed the state case because [he] was entirely unable to perform his duties," which "were completely halted

---

[10] The trial court incorrectly indicated the five-year language was in the June 13, 2014 entry when it was in the March 26, 2015 entry.

under threat of [a] contempt action in federal court." However, the federal court did not have subject-matter jurisdiction to adjudicate Timber View's foreclosure claims or to appoint Skrobot as receiver because the appointment arose out of those claims. *Timber View Properties, Inc.*, 2019 WL 4696386, at *5 (S.D. Ohio Sept. 26, 2019). " 'A district court's judgment, entered without subject-matter jurisdiction, is void *ab initio*[.]' " *Geoshack Canada Co. v. Hendriks*, 2022 WL 2387340, *1 (6th Cir. June 28, 2022), quoting *Doe v. Univ. of Mich.*, 2020 WL 9171175, *1 (6th Cir. Dec. 23, 2020). Consequently, vacatur of the federal receivership appointment was not necessary though it formalized the outcome and eliminated any confusion. *See Geoshack* at *1.

{¶60} Martin's decision to not operate the park while under the threat of a federal contempt action is understandable, but the trial court and Martin were aware of the chilling effect the federal receivership had on Martin's exercise of his authority to operate the park. No measures were taken to stay or extend the five-year period Martin had to operate the park before it elapsed. It appears that Martin did not perform any acts as receiver between the time the federal court vacated Skrobot's appointment on September 26, 2019, and the expiration of Martin's authority to operate the park on March 26, 2020.

3. Authority Under the March 31, 2021 Entry

{¶61} The trial court effectively reauthorized Martin to operate the park when it approved his lease with Eventuresencore. As Anthony points out, as receiver for HPAP, Martin has no greater rights to the real property than HPAP has. *See Woodrow v. Geneva Coal & Mining Co.*, 17 Ohio App. 56, 58 (4th Dist.1922), quoting 23 *Ruling Case Law* 60 (" 'the receiver merely stands in the place of, and has no greater rights than, the party over whose property he has been appointed receiver' "). Thus, implicit in Martin's

reauthorization and the lease approval is a finding that HPAP had an ongoing interest in the real property where the park is located as of March 31, 2021.

{¶62} It is undisputed that HPAP has no ownership interest in the real property. Since the early days of the receivership, Martin has taken the position that he can operate the park under the lease between HP and M & T because HPAP is HP's successor. In the August 29, 2019 entry, the trial court made some statements which support the position that HPAP is HP's successor and took over HP's lease. The court found HPAP "operated the same businesses as [HP], in the same location, with the same assets * * *." The "only difference was that Mr. Gemmell had, according to Mr. Anthony, no ownership interest in" HPAP. The court found M & T and Anthony violated HP's lease "when they took all assets of [HP], including the lease." The court also found that "when [HP] was dissolved, its assets were taken by" Anthony, M & T, and HPAP. And the court found that HPAP "received all the assets of [HP] * * *."

{¶63} However, the August 29, 2019 entry also contains statements indicating HP's lease was terminated. The court found M & T "was the device used by Mr. Anthony to improperly cancel the lease between [M & T] and [HP]." The court found M & T "unilaterally terminated its five-year renewable lease with [HP]. This termination was done at a time when there was still over two years to go on the term of the lease." The court found that "under the cancelled lease, Mr. Gemmell could elect to have [HP] renew the lease for another five-year period. Mr. Anthony, by unilaterally terminating the lease, took away Mr. Gemmell's right to renew the lease—which was a valuable asset from Mr. Gemmell's perspective—for another five-year period."

{¶64} The August 29, 2019 entry also contains statements suggesting the court found HPAP's separate lease with M & T was invalid. The court stated that M & T "attempted to terminate the five-year renewable lease" with HP "by signing a new lease with [HPAP]." The court further stated: "This was done without the knowledge or consent of Mr. Gemmell. Mr. Anthony, at no time, informed this court of these actions. In addition, Mr. Anthony did not move this court for approval."

{¶65} The August 29, 2019 entry is an interlocutory order; it does not resolve all the parties' claims or include Civ.R. 54(B) language. *See Gemmell v. Anthony*, 2019-Ohio-469, ¶ 36 (4th Dist.). However, the trial court did not modify this entry or reconcile its implicit finding that HPAP has an interest in the real property with the statements in the August 29, 2019 entry suggesting that HP's lease was terminated and that HPAP's separate lease is invalid. In the March 31, 2021 entry, the trial court did not articulate any basis for its implicit finding that HPAP had an interest in the real property as of that date. The trial court also offered no explanation for this implicit finding when it rejected oral arguments on the subject at the contempt hearing. At one point, the court seemed to agree with Martin's counsel that Martin's authority over the real property had never been in dispute, though it had been a point of contention since the early days of Martin's appointment. The court also suggested Anthony should have raised the issue in a written motion before the contempt hearing, but the court did not elaborate on this point. And in the contempt entry, the court described the real property as "the premises that is the subject of the receivership" without explanation.

{¶66} "In order for an appellate court to conduct a meaningful review of the decision of a lower court, the appellate court must be able to discern the basis for the

decision below, and if the basis for the decision cannot be ascertained, the appellate court may remand for clarification." *Newton v. Grandview Hosp.*, 1993 WL 81800, *2 (2d Dist. Mar. 22, 1993). Based on the foregoing, we cannot discern the basis for the trial court's implicit finding that HPAP had an ongoing interest in the real property where the park is located as of March 31, 2021. Therefore, we cannot ascertain whether the trial court erred when it effectively reauthorized Martin to operate the park by approving his lease with Eventuresencore.

### F. How Do Our Rulings Impact the Issue of Standing?

{¶67} Next, we address the impact of our rulings regarding the scope of Martin's authority on his standing to file the contempt motion. In the motion, Martin suggested Anthony was in contempt for interfering with his efforts to open and operate the park through his tenant, Eventuresencore, and for interfering with his possession of receivership assets. Statements in the contempt entry indicate the trial court agreed, though the court did not specify what conduct it found interfered with Martin's efforts to operate the park through his tenant and what conduct it found interfered with his possession of receivership assets.

{¶68} When Martin filed the contempt motion, he lacked standing to assert that Anthony interfered with his attempts to operate the park through his tenant between March 26, 2020 and March 30, 2021. Anthony could not have injured Martin by interfering with his attempts to operate the park through Eventuresencore during that period. As explained above, Martin's authority to operate the park under the March 26, 2015 entry expired on March 26, 2020, and he was not reauthorized to operate the park and lease it to Eventuresencore until March 31, 2021.

{¶69} When Martin filed the contempt motion, he did have standing to assert that Anthony interfered with his attempts to operate the park through his tenant after March 30, 2021.  As of March 31, 2021, Martin had court authority to operate the park again and a court-approved lease with Eventuresencore.  Even if we found the trial court erred when it implicitly found HPAP had an ongoing interest in the real property as of that date which supported the reauthorization and lease approval, that finding would not impact Martin's standing, which "is determined at the commencement of the action."  *Chase Home Fin., L.L.C.*, 2014-Ohio-3484, at ¶ 8 (4th Dist.), citing *Fed. Home Loan Mtge. Corp.*, 2012-Ohio-5017, at ¶ 24-26.  However, as we will explain below, such an error could still impact the contempt finding.

{¶70} When Martin filed the contempt motion, he also had standing to assert that Anthony interfered with his possession of receivership assets.  By virtue of Martin's appointment in the June 13, 2014 entry, he had the right to "take and keep possession of property" under former R.C. 2735.04.  The trial court did not take away that authority or place a time limit on it.   The trial court reaffirmed that authority in the March 31, 2021 entry when it found that Martin had ongoing authority pursuant to the June 13, 2014 entry.

G.  Summary

{¶71} For the foregoing reasons, we overrule the second assignment of error in part and sustain it in part.  Martin had standing to assert that Anthony interfered with his possession of receivership assets and to assert that Anthony interfered with his attempts to operate the park through his tenant, Eventuresencore, after March 30, 2021.  Martin did not have standing to assert that Anthony interfered with his attempts to operate the park through his tenant between March 26, 2020 and March 30, 2021. Consequently, we

reverse the March 30, 2022 entry to the extent the trial court found Anthony in contempt for interfering with Martin's attempts to operate the park through Eventuresencore based on conduct occurring between March 26, 2020 and March 30, 2021, and conduct occurring at indeterminate times. However, because the trial court did not specify what conduct it found interfered with Martin's efforts to operate the park through his tenant and what conduct it found interfered with his possession of receivership assets, we must remand to the trial court for clarification of its contempt finding.

## VI.  THIRD ASSIGNMENT OF ERROR

{¶72}  In the third assignment of error, Anthony contends the trial court committed reversible error when it failed to follow the facts of the case. Anthony directs our attention to the trial court's statements in the contempt entry that:  (1) his actions towards the receiver included "locking the park gates, threatening the receiver with trespassing charges, and threatening the receiver with guard dogs," and (2) Anthony orchestrated the filing of the federal lawsuit, which included filing a motion for the appointment of a federal receiver. Anthony asserts there was no evidence presented at the contempt hearing to support these statements. Therefore, he asserts that the trial court "is basing its ruling (and punishment) on matters that predate the August 2019 Final Judgment Entry, is fabricating facts to justify its ruling, or has confused this case with another case."

{¶73}  The facts Anthony complains of all appear in the August 29, 2019 judgment entry. Even if it was somehow error for the court to repeat these facts in the contempt entry, Anthony has not shown the error affected his substantial rights. *See* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.")  Contrary to what

Anthony implies, the court did not base the contempt finding and sentence on those facts. The trial court used those facts only as grounds for rejecting Anthony's contention that Martin was estopped from arguing the receivership was valid due to his inaction after the court issued the August 29, 2019 entry, not grounds for the contempt finding. Anthony has not argued on appeal, let alone demonstrated, that there is any merit to his estoppel argument. Therefore, we overrule the third assignment of error to the extent Anthony challenges the above-mentioned factual findings.

**{¶74}** Anthony also asserts that the trial court failed to follow the facts of the case because in the contempt entry, the court "repeatedly and erroneously references [the] 'premises that is the subject of the receivership.' " Anthony maintains that "[a]s set forth throughout [his] brief, Martin was never appointed receiver of the real property. He was the receiver of a tenant, [HPAP]."

**{¶75}** We are unable to reach the merits of Anthony's assertion. In the contempt entry, the trial court stated that Eventuresencore had a lease with Martin "as to the operation of a zip line park at the premises that is the subject of the receivership." In describing the real property in this manner, the trial court essentially reiterated what it implicitly found in the March 31, 2021 entry—that HPAP had an ongoing interest in the real property where the park is located as of that date. As explained above, we cannot conduct a meaningful review of this implicit finding because we cannot discern the basis for it. Therefore, we cannot determine whether the contempt entry correctly described the real property as "the premises that is the subject of the receivership." If that finding is erroneous, we would reverse the March 31, 2021 entry to the extent it reauthorized Martin to operate the park by approving his lease with Eventuresencore. And as we

explained above, " '[d]epending on the circumstances of a case, a finding of civil contempt may not survive if the underlying judgment or order is reversed.' " *Superior*, 2023-Ohio-967, at ¶ 55 (4th Dist.), quoting *Foley*, 2006-Ohio-946, at ¶ 35 (10th Dist.). Accordingly, we must remand to the trial court for clarification.

## VII.  FOURTH ASSIGNMENT OF ERROR

**{¶76}**  In the fourth assignment of error, Anthony contends the trial court committed reversible error in making the purge conditions.  Anthony asserts that a trial court errs if it imposes purge conditions which regulate future conduct because they do not give the contemnor a proper chance to purge the contempt.  He asserts that by ordering that he "never enter the property owned by Evergreen" and "never operate a zipline on Evergreen's property," the court gave him "no clear opportunity to purge the contempt except by regulating his future conduct forever." Therefore, he asserts that "the trial court's direction to comply with a permanent ban should be reversed."  He asserts that the condition that he follow the March 26, 2015 and March 31, 2021 entries is improper because "[p]rospective or future compliance with a judgment entry as a condition to purge is void." He asserts that the condition that he pay the receivership's attorney fees and the costs of the contempt action violates Article I, Section 15 of the Ohio Constitution, which prohibits imprisonment for debt in a civil action. He asserts that the condition that he vacate and not return to the residence at 15111 State Route 664 "bears no relation to any prohibited conduct at issue" and violates his "freedom to associate with Evergreen, and its principal at Evergreen's real property."  And he asserts "none of the remaining purge conditions seek compliance with any component of the final judgment," "the only

enforceable entry that remains in this case," so "there is no rational or legal basis to support those purge conditions."

**{¶77}** Initially, we question whether the contempt entry is a final, appealable order as to the purge conditions. "As a general proposition, '[i]f a trial court order leaves issues unresolved and contemplates further action then the order is not a final, appealable order.' " *Quesinberry v. Quesinberry*, 2021-Ohio-4680, ¶ 37 (2d Dist.), quoting *McCracken v. Lee*, 2020-Ohio-3125, ¶ 10 (10th Dist.). One of the purge conditions states: "Mr. Anthony is to pay the attorney's fees of the receivership and costs as to this contempt action within 30 days of the date of the approval by the Court of the amount of these fees." This language indicates the court left unresolved the amount of fees and contemplated further action on that matter.

**{¶78}** However, it is unnecessary for us to resolve the jurisdictional issue. It would be premature for us to address the purge conditions at this time because we have partially reversed the contempt finding and remanded for the trial court to clarify certain matters related to the contempt finding. On remand, the trial court might alter the purge conditions. Therefore, the fourth assignment of error is moot.

**{¶79}** We note that in his arguments under the fourth assignment of error, Anthony maintains that there "is no legal basis to support a sanction of civil contempt in this case." He asserts that the contempt judgment seeks to coerce compliance with the March 26, 2015 and March 31, 2021[11] entries, but the March 26, 2015 entry was superseded by the August 29, 2019 final judgment, and the March 31, 2021 entry is void because it was entered after the final judgment. He also suggests the contempt entry is void because

---

[11] Anthony's brief incorrectly indicates this entry was issued March 30, 2021.

the trial court lacked subject-matter jurisdiction to issue it after the August 29, 2019 final judgment. These arguments are repetitious of those we rejected under the first assignment of error.

## VIII. CONCLUSION

{¶80} We overrule the first assignment of error. We overrule the second assignment of error in part and sustain it in part. We cannot reach the merits of the third assignment of error to the extent Anthony asserts the trial court failed to follow the facts of the case by describing the real property as the premises that is the subject of the receivership. We overrule the third assignment of error in all other respects. The fourth assignment of error is moot, so we need not address it.

{¶81} We affirm the March 31, 2021 and March 30, 2022 entries to the extent they imply the trial court had subject-matter jurisdiction to enter them. We affirm the March 31, 2021 entry to the extent the trial court found Martin had ongoing authority under the June 13, 2014 entry appointing him receiver. We reverse the March 31, 2021 entry to the extent the trial court found Martin had ongoing authority to operate the park under the March 26, 2015 entry. We affirm the March 30, 2022 entry to the extent it implies Martin had standing to assert that Anthony interfered with his possession of receivership assets and interfered with his attempts to operate the park through Eventuresencore after March 30, 2021. We reverse the March 30, 2022 entry to the extent the trial court found Anthony in contempt for interfering with Martin's attempts to operate the park through Eventuresencore based on conduct occurring between March 26, 2020 and March 30, 2021, and conduct occurring at indeterminate times. However, because the trial court did not specify what conduct it found interfered with Martin's efforts to operate the park

through his tenant and what conduct it found interfered with his possession of receivership assets, we remand to the trial court for clarification of its contempt finding. We also remand to the trial court for clarification of its implicit finding that HPAP had an ongoing interest in the real property as of March 31, 2021.

**{¶82}** To aid the trial court on remand, we provide the following guidance. The court should fully resolve all the parties' claims. It would be prudent for the court to address the status of the receivership in any entry doing so to avoid any confusion on that subject.

**{¶83}** The court should clarify what conduct it found interfered with Martin's efforts to operate the park through his tenant and what conduct it found interfered with his possession of receivership assets. We have determined that Anthony cannot be held in contempt for interfering with Martin's attempts to operate the park through Eventuresencore based on conduct occurring between March 26, 2020 and March 30, 2021, and conduct occurring at indeterminate times. Consequently, once the court clarifies its contempt finding, it should modify its finding to comport with our determination.

**{¶84}** The court should also clarify its implicit finding that HPAP had an ongoing interest in the real property where the park is located as of March 31, 2021. If the court found that interest stems from the lease between HP and M & T or the lease between HPAP and M & T, the court should articulate that fact and reconcile that determination with statements in the August 29, 2019 judgment entry regarding those leases. It would be prudent for the court to address any noncompliance with lease provisions and the impact of the apparent transfer of the real property to Evergreen in 2019. It appears there is a separate case pending in the trial court between Eventuresencore and Evergreen

regarding the validity of the lease between those entities.  The court may want to consolidate this matter with that case.  If the court, on further reflection, concludes HPAP had no continuing interest in the real property as of March 31, 2021, the court should consider what impact, if any, that determination has on its finding of contempt.

**{¶85}** The court should consider whether any modifications to its contempt finding warrant modifications to the purge conditions.  Before reimposing any purge conditions, it would be helpful for the court to analyze any objections to them and fully resolve the terms of the conditions.  Such measures would facilitate any future appellate review.

MARCH 31, 2021 JUDGMENT AFFIRMED
IN PART AND REVERSED IN PART,
MARCH 30, 2022 JUDGMENT AFFIRMED
IN PART AND REVERSED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the MARCH 31, 2021 JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, that the MARCH 30, 2022 JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, and that the CAUSE IS REMANDED. Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**